911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert DAVENPORT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John TURNER, Defendant-Appellant.
 Nos. 89-5461, 89-5462.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1990.
Decided July 26, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CR-89-125-A)
 Michael Hugh Doherty, Barham & Radigan, P.C., Arlington, Va., Thomas Walsh Farquhar, Arlington, Va., for appellants.
 Keith Allan Palzer, Special Assistant United States Attorney, Alexandria, Va., (argued), for appellee; Henry E. Hudson, United States Attorney, Debra S. Straus, Special Assistant United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, K.K. HALL, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, Sitting by Designation.
 ERVIN, Chief Judge:
 
 
 1
 Defendants John Turner and Robert Davenport appeal their convictions of assault resulting in serious bodily harm and assault with a dangerous weapon. Specifically, they argue that the court unconstitutionally ordered blood samples to be taken from them and that the counts on which they were convicted were multiplicitous and constituted double jeopardy. For the reasons discussed below, we affirm the judgments of conviction of the defendants.
 
 I.
 
 2
 This case arises from a stabbing during a fight in Dormitory 24 at the Central Facility of the Lorton Reformatory. Tony Murphy, who was stabbed ten times during the fight, identified Turner and Davenport as his assailants. Reformatory guards saw Turner running from the scene of the stabbing, and Turner himself was stabbed once in the leg. Davenport was found shortly after the fight hiding in a bathroom near the location of the stabbing.
 
 
 3
 On March 29, 1989, a grand jury returned an indictment charging Turner and Davenport with various counts stemming from the stabbing of Murphy. Count I of the indictment charged Turner and Davenport with assault with intent to commit murder, 18 U.S.C. Sec. 113(a); Count II charged them with assault resulting in serious bodily harm, 18 U.S.C. Sec. 113(f); and Count III charged Davenport and Count IV charged Turner with possession of a weapon not authorized by the prison authority.[1] At their arraignment, Turner and Davenport pled not guilty to all charges.
 
 
 4
 Prior to trial, the government moved for an order from the district court judge, Judge Albert V. Bryan, Jr., requiring the defendants to submit blood samples for evidentiary comparisons. Turner and Davenport objected to this motion on several grounds, including the fact that the application for the order did not comply with the oath requirements of Fed.R.Crim.P. 41(c) and the fourth amendment. The district court issued the order over these objections.
 
 
 5
 During the jury trial that followed, a serologist with the Federal Bureau of Investigation testified regarding his analysis of the blood samples of Murphy, Davenport and Turner, and his comparison of the samples with blood-stained clothing that was admitted into evidence. The serologist testified that: (1) blood on Turner's knife was that of Murphy; (2) blood on Davenport's left shoe was consistent with Murphy's blood and inconsistent with that of either defendant; (3) blood on the leg of Turner's jumpsuit was consistent with Turner's blood; (4) blood on Davenport's jacket was consistent with Murphy's blood and could not have come from Davenport;[2] and (5) blood on Turner's shoes could not be identified past the fact that it was human blood. The serologist testified that blood tests such as those performed in the instant case cannot positively identify the source of the blood stain but can only include or exclude a subject as a possible source of blood.
 
 
 6
 The jury found Turner and Davenport guilty of assault with a dangerous weapon under 18 U.S.C. Sec. 113(c) (a lesser-included offense of Count I of the indictment), assault resulting in serious bodily injury, and the weapon possession violations. On September 8, 1989, the district court sentenced both men to sixty months imprisonment for assault with a dangerous weapon, ninety-two months for assault resulting in serious bodily injury, and sixty months on the weapon possession charge, to be served concurrently to each other and consecutively to any sentence they were presently serving. This appeal followed.
 
 II.
 
 7
 Turner and Davenport assert that their convictions should be overturned because the district court judge erred by ordering a blood test without administering the oath or affirmation required by the fourth amendment[3] and Fed.R.Crim.P. 41(c).[4]
 
 
 8
 For almost seventy years, the law in this circuit has been settled that a search warrant can only be issued when supported by an affidavit or oath, as required by the fourth amendment. See Honeycutt v. United States, 277 F. 939, 941 (4th Cir.1921). Evidence that is seized pursuant to a warrant without affidavit or affirmation cannot be used against the defendants. Id. This requirement assures the truthfulness of the assertions of the law enforcement officer or prosecutor in support of the warrant. As explained by the Second Circuit:
 
 
 9
 It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed.
 
 
 10
 United States v. Turner, 558 F.2d 46, 50 (2d Cir.1977).
 
 
 11
 Blood tests of criminal defendants performed for evidentiary reasons have been designated "searches" under the fourth amendment by the Supreme Court, and thus are subject to the warrant requirement. Schmerber v. California, 384 U.S. 757, 767 (1966). Therefore, a warrant or court order for a blood test must be supported by a sworn affidavit or oath to be valid. In the present case, these requirements were not met, and the use of the blood test evidence against Turner and Davenport at trial was error. The question remains, however, whether this error requires us to reverse their convictions.
 
 
 12
 When a constitutional violation occurs at or before trial, reversal is not required unless there is a reasonable possibility that the improperly admitted evidence might have contributed to the conviction. Chapman v. California, 386 U.S. 18, 24 (1967). To find that a constitutional error was harmless, the appeals court "must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. To so hold, we must conclude "that the 'minds of the jury' would not have found the State's case significantly less persuasive" had the evidence in question been properly excluded. Schneble v. Florida, 405 U.S. 427, 432 (1972).
 
 
 13
 In this case, we find that the evidence against the appellants, independent of the blood analyses, was so overwhelming that any error was harmless. Turner admitted to stabbing Murphy multiple times; his defense was that he stabbed him in self-defense. Therefore, the testimony of the serologist was not needed to place Turner at the crime scene. The blood tests and analyses did not significantly add to or detract from Turner's affirmative defense of self-defense.
 
 
 14
 Murphy positively identified Davenport as one of the inmates who stabbed him. Even though Davenport denied Murphy's allegations, he admitted that he did witness the fight and that the blood on his sneaker was Murphy's blood in which he had stepped after the fight. In addition, a jacket that the government's evidence identified as Davenport's was stained with blood. Therefore, the serologist's report was not necessary to establish his presence at the fight either. Finally, one of the guards at Lorton testified that he discovered Davenport hiding in the bathroom immediately next to the area where the fight had occurred. Davenport denied that the jacket was his and denied that he was discovered in the bathroom.
 
 
 15
 The blood tests were admitted with an admonition by the government's expert witness that blood tests "can't specifically point to a person and say this bloodstain comes from this person, but ... can either include them as a possible donor or ... exclude them." This clear warning against the independent weight of the blood tests, coupled with Murphy's eyewitness identification and the other evidence placing Turner and Davenport at the attack, is sufficient to render harmless beyond a reasonable doubt any error in the admission of the blood test evidence.
 
 III.
 
 16
 Davenport and Turner also contend that their sentences for both assault with a dangerous weapon, 18 U.S.C. Sec. 113(c), and assault resulting in serious bodily injury, 18 U.S.C. Sec. 113(f), violated the double jeopardy clause as multiple punishments for the same offense. This argument is without merit.
 
 
 17
 Under Blockburger v. United States, 284 U.S. 299 (1932), two separate statutory offenses will be treated as one offense under the double jeopardy clause in certain circumstances: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304.
 
 
 18
 In the present case, 18 U.S.C. Sec. 113(c) requires the following elements: (1) a criminal assault, and (2) that the assault involved a "dangerous weapon" (regardless of injury). Section 113(f) requires (1) a criminal assault, and (2) that the assault actually resulted in grave and serious injury (regardless of the weapon used). Under the rule in Blockburger, section 113(c) requires an element of proof that section 113(f) does not, and vice versa. Therefore, the convictions of Turner and Davenport did not constitute double jeopardy.
 
 
 19
 Turner and Davenport also contend that the indictment and jury instructions were multiplicitous in that they contained charges for two assault offenses when only one assault occurred. The analysis here is the same as discussed above concerning double jeopardy. Therefore, we find that the indictment neither prejudiced the jury nor was multiplicitous.[5]
 
 IV.
 
 20
 Even though we affirm the defendants' convictions, this case provides a classic example of the problems that can arise when prosecutors fail to observe the proper and necessary procedures dictated by the Federal Rules of Criminal Procedure and the United States Constitution. We are fully aware of the assertions that the rights of criminal defendants can be sufficiently protected by alternative safeguards and that "mere technicalities" should not stand in the way of an efficient criminal justice system. The words, however, of the Bill of Rights, and the principles they represent, have served for almost two hundred years as the foundation of our individual liberty. They have withstood the test of time as an appropriate balance between conflicting interests, and they continue to be essential in protecting the freedoms we too often take for granted. The Founding Fathers chose those specific words, and this court will not alter their meaning in a way to lessen their impact.
 
 
 21
 The Assistant United States Attorney in this case moved for an order from the district court requiring the defendants to submit blood samples for evidentiary comparisons. The request was not supported by any sworn affidavit or live testimony. To comply with the requirements of the fourth amendment and Rule 41(c), the prosecutor should have filed along with the motion "an affidavit or affidavits sworn to before a federal magistrate or state judge and establishing the grounds for issuing the warrant." Fed.R.Crim.P. 41(c)(1).[6] A sworn affidavit by the prosecutor asserting the facts of the case and the reasons why blood samples are necessary will fulfill the "oath or affirmation" requirement of the fourth amendment.
 
 
 22
 We can very well appreciate the pressures placed on all facets of our justice system by an ever-increasing caseload. Further, we empathize with the challenges faced by prosecutors in juggling increased demands on their time and energy; however, "these facts cannot excuse the need for scrupulous adherence to our constitutional principles." Grady v. Corbin, 58 U.S.L.W. 4599, 4603 (1990); see also Santobello v. New York, 404 U.S. 257, 260 (1971) ("The heavy workload [on prosecutors] may well explain these episodes, but it does not excuse them.") With these words of caution, the convictions of Turner and Davenport are
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 A third defendant, Carlos Sanders, was charged along with Turner and Davenport in Counts I and II of the indictment and individually in Count V for a weapons charge. Sanders was acquitted at trial
 
 
 [2]
 Davenport denied that the jacket presented into evidence was his
 
 
 [3]
 The fourth amendment requires:
 [N]o warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons and things to be seized.
 U.S. Const. amend. IV.
 
 
 [4]
 Rule 41(c)(1) of the Federal Rules of Criminal Procedure states:
 A warrant [other than one issued upon oral testimony under 41(c)(2) ] shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant.
 Fed.R.Crim.P. 41(c)(1).
 
 
 [5]
 Moreover, Turner and Davenport failed to raise this issue prior to trial. Therefore, they waived their right to challenge the indictment on grounds of multiplicity. See Fed.R.Crim.P. 12(f); United States v. Price, 763 F.2d 640 (4th Cir.1985)
 
 
 [6]
 Alternatively, a magistrate or judge may issue a warrant based upon sworn oral testimony without having a written affidavit. See Fed.R.Crim.P. 42(c)(2)