64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin GOODMAN, a/k/a Kenzie, Defendant-Appellant.
 No. 94-5869.
 United States Court of Appeals, Fourth Circuit.
 Argued July 13, 1995.
Decided August 14, 1995.
 
 ARGUED: Roger Allen Eddleman, Falls Church, Virginia, for Appellant. William Graham Otis, Assistant United States Attorney, Alexandria, VA, for Appellee. ON BRIEF: Helen F. Fahey, United States Attorney, Kathleen M. Kahoe, Assistant United States Attorney, Alexandria, VA, for Appellee.
 Before WILKINS and WILLIAMS, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 While incarcerated at Lorton Federal Maximum Security Reformatory in Virginia, Marvin Goodman attacked another prisoner with a razor blade on February 1, 1994. After a jury trial, Goodman was convicted of assault with a dangerous weapon with intent to do bodily harm, 18 U.S.C.A. Sec. 113(c) (West Supp.1994); assault resulting in serious bodily injury, 18 U.S.C.A. Sec. 113(f) (West Supp.1994); and prisoner possession of an unauthorized weapon in violation of Va.Code Ann. Sec. 53.1-203(4), prosecuted through the Assimilated Crimes Act (ACA), 18 U.S.C. Sec. 13 (1988). Goodman raises three issues on appeal. First, he contends that the Double Jeopardy Clause of the Fifth Amendment prohibited his prosecution for three offenses arising out of the same conduct. Next, he asserts that he cannot be prosecuted under the ACA for prisoner possession of an unauthorized weapon because federal law also prohibits this crime. Finally, he challenges the sufficiency of the evidence to convict as to all three counts. After a thorough review of the record and with the benefit of oral argument, we affirm his convictions on all grounds.
 
 I.
 
 2
 Viewed in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80 (1942), testimony at trial shows that on the day in question, Goodman and another inmate, Deangelo Green, were arguing over a basketball game. Seeing that the argument was getting heated, a third inmate, Curtis Houston, asked Goodman and Green to stop arguing, telling them that "it wasn't worth arguing about. It wasn't nothing but a basketball game." (J.A. 40.) Goodman told Houston to "stay out of it." Id. The argument continued as Goodman, Green, and Houston moved indoors from the recreation area. A corrections officer ultimately stopped the fight.
 
 
 3
 As Houston was walking away from the argument, he felt someone grab him from behind and pull him to the floor. Houston immediately raised his hands to protect his face from a multitude of cuts that the assailant was inflicting. Houston could not see his attacker because of his raised arms and because of the blood in his eyes. However, when the attack was over and Houston could see again, Houston saw Goodman across the room with an unidentifiable object in his hands. Goodman, who was being restrained by other prisoners, shouted at him, "you all don't know who you all [are] playing with." (J.A. 55.) Another inmate, John McNeil, corroborated Houston's story, except he explicitly identified Goodman as the attacker. Additionally, according to both Houston and McNeil, it was well known around the prison that Goodman kept a razor blade in his mouth.
 
 
 4
 Goodman was indicted on June 29, 1994, for assault with a dangerous weapon with intent to do bodily harm, assault resulting in serious bodily injury, and prisoner possession of an unauthorized weapon. At trial on August 31, 1994, Houston and McNeil testified to the events described above. Dr. Henry Paul, Houston's treating physician, testified to the severity and extent of Houston's injuries. Specifically, he noted that the flexor tendon of Houston's right ring finger was permanently damaged, severely restricting the digit's movement. He confirmed that Houston's injury could have been caused by a razor blade.
 
 
 5
 The jury convicted Goodman on all three counts. On November 4, 1994, the district court sentenced Goodman to 120 months on Count 1 to run consecutively to his current sentence, and 60 months each on Counts 2 and 3 to run concurrently with Count 1. Goodman timely filed his notice of appeal.
 
 II.
 
 6
 First, Goodman alleges that the Double Jeopardy Clause prevents his conviction on all three counts. Essentially, his argument is that "[t]he trial court improperly punished [him] three times for one act of assault with a dangerous weapon." Goodman's argument, however, misinterprets the scope of the Double Jeopardy Clause.
 
 
 7
 In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court established the "elements test" to determine whether prosecut ing someone under several statutes for the same act violates the Double Jeopardy Clause:
 
 
 8
 The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.
 
 
 9
 Id. at 304. Or otherwise stated, Blockburger asks whether "[e]ach of the offenses created requires proof of a different element." Id. Courts have consistently applied this test to resolve difficult Double Jeopardy issues. See United States v. Dixon, 113 S.Ct. 2849, 2860 (1993) (describing the Blockburger test as having "deep historical roots and [acceptance] in numerous precedents" of the Supreme Court).
 
 
 10
 The past decade, however, has seen several reworkings of the Double Jeopardy analysis. In 1990, the Supreme Court decided Grady v. Corbin, 495 U.S. 508 (1990), and added another step to the Double Jeopardy analysis. The Court held that in addition to surviving the Blockburger "same-elements" test, multiple prosecutions must satisfy the "same conduct" test, in which the Constitution prohibits "any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Id. at 521. This test would prohibit the government from prosecuting any two offenses in which it would have to twice prove that the defendant committed a single act. The Grady test, however, was short lived. In 1993, the Court reversed itself in United States v. Dixon, noting that the Grady standard was not compelled by precedent or the historical understanding of double jeopardy, and "proved [to be] unstable in application." Dixon, 113 S.Ct. at 2863.
 
 
 11
 Goodman's argument that the Double Jeopardy Clause prevents the Government from prosecuting him under three different statutes for the same conduct essentially asks us to apply the Grady "conduct" test. As noted above, the Grady test was discredited in Dixon in favor of a return to the original Blockburger analysis. Therefore, to determine whether prosecuting Goodman under all three statutes violates the Double Jeopardy Clause, we must decide only whether the gov ernment must prove a different element under each of the three statutory schemes, not whether the same conduct is implicated by all three statutes. Under this analysis, Goodman plainly fails to raise a constitutional bar to his prosecution.
 
 
 12
 To prove Count 1, a violation of 18 U.S.C. Sec. 113(f), assault resulting in serious bodily injury, the government must show:
 
 
 13
 1. The defendant assaulted another person within the special maritime and territorial jurisdiction of the United States;
 
 
 14
 2. The assault resulted in serious bodily injury; and
 
 
 15
 3. The defendant acted knowingly and willfully.
 
 
 16
 Next, to prove Count 2, a violation of 18 U.S.C. Sec. 113(c), assault with a dangerous weapon with the intent to do bodily harm, the government must establish:
 
 
 17
 1. The defendant assaulted another person within the special maritime and territorial jurisdiction of the United States;
 
 
 18
 2. The defendant used a dangerous weapon to commit the assault;
 
 
 19
 3. The defendant specifically intended to do bodily harm; and
 
 
 20
 4. The defendant acted knowingly and willfully.
 
 
 21
 Finally, to prove a violation of Va.Code Ann. Sec. 53.1-203(4), prisoner possession of an unauthorized weapon, assimilated through 18 U.S.C. Sec. 113, the government must demonstrate:
 
 
 22
 1. The act occurred in the special maritime and territorial jurisdiction of the United States;
 
 
 23
 2. The defendant was a prisoner in a correctional facility;
 
 
 24
 3. The defendant possessed an instrument capable of causing death or bodily injury; and
 
 
 25
 4. The instrument was unauthorized.
 
 
 26
 As demonstrated from the italicized sentences above, each crime requires the government to prove at least one element not common to the other counts. Furthermore, it is obvious that each count prosecutes different conduct: Count 1 prosecutes the injury; Count 2 prosecutes the use of a dangerous weapon with the specific intent to cause injury; and Count 3 prosecutes the unauthorized possession of a dangerous weapon in a prison. From our application of the Blockburger analysis, we conclude that although the three counts may rest on some of the same underlying conduct, the Fifth Amendment only requires that each count compel the government to prove at least one different element. Because that standard is satisfied, we reject Goodman's double jeopardy challenge to his conviction.
 
 III.
 
 27
 Next, Goodman argues that he cannot be prosecuted under the Assimilated Crimes Act for violating the Virginia Code prohibition of prisoner possession of an unauthorized weapon. Initially, he argues that Congress's criminalization of assault with a dangerous weapon preempts his assimilated state law conviction because the ACA only allows for the assimilation of crimes "not made punishable by any enactment of Congress." 18 U.S.C. Sec. 13(a) (1988).
 
 It is true that
 
 28
 [t]he purpose of the [ACA] is to supplement the Criminal Code of the United States by adopting state criminal statutes relating to acts or omissions committed within areas over which the federal government has exclusive jurisdiction.... The Act has no application if such acts or omissions are made penal by federal statute.
 
 
 29
 United States v. Patmore, 475 F.2d 752, 753 (10th Cir.1973); see also United States v. Perez, 956 F.2d 1098, 1101 (11th Cir.1992) ("The ACA ... may not be used when another federal law criminalizes the exact same conduct as the state law sought to be applied."). For example, in Patmore the Tenth Circuit reversed an ACA conviction under Kansas law for assault with a dangerous weapon because the exact same crime was punishable under 18 U.S.C. Sec. 113(c). 475 F.2d at 753. We cannot conclude, however, that assault with a dangerous weapon under 18 U.S.C. Sec. 113(c) forbids the same act as the unauthorized possession of a weapon by a prisoner in a correctional facility under Va.Code Ann. Sec. 53.1-203(4). The first crime forbids anyone from using a dangerous weapon with the intent to assault another under federal jurisdiction. The second crime simply is directed at preventing prisoners from possessing a dangerous weapon. The gravamen of the first crime is the specific intent to assault; the gravamen of the second crime is the status of the individual in possession. We do not believe that the ACA prohibits prosecuting Goodman under the applicable Virginia Code sections. Thus, we affirm the conviction on this ground.
 
 
 30
 Goodman's second claim is that Va.Code Ann. Sec. 53.1-203(4) is a lesser included offense of 18 U.S.C. Sec. 113(c), assault with a dangerous weapon, and, therefore, he cannot be convicted of both. For much the same reasons that we rejected Goodman's double jeopardy challenge, we cannot endorse this argument. "[O]ne offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck v. United States, 489 U.S. 705, 716 (1989). The lesser offense is not included in the greater one "[w]here the lesser offense requires an element not required for the greater offense." Id. at 716. As stated above, Va.Code Ann. Sec. 53.1-203(4) contains several elements different from those in 18 U.S.C. Sec. 113(c), namely proof of the defendant's prisoner status and proof that the weapon was unauthorized in the prison. Following the Schmuck test, we accordingly reject Goodman's assertion that the Virginia Code provision is a lesser included offense of assault with a dangerous weapon.*
 
 IV.
 
 31
 Finally, Goodman attacks all of his convictions on sufficiency of the evidence grounds.
 
 
 32
 In reviewing whether the evidence was sufficient to convict a defendant, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); United States v. Murphy, 35 F.3d 143, 148 (4th Cir.1994), cert. denied, 115 S.Ct. 954 (1995).... Therefore, "[i]f there is substantial evidence to support the verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government, ... we must affirm." [Murphy, 35 F.3d at 148.]
 
 
 33
 United States v. Singh, 54 F.3d 1182, 1186 (4th Cir.1995); see also Glasser, 315 U.S. at 80.
 
 
 34
 Goodman's challenge to Counts 1 and 2 is primarily based on attacking the credibility of the witnesses at trial. However, "[t]he jury, ________ included offense of Count 2 because the bodily injury component required the same proof and Count 2 required only one additional element.
 
 
 35
 We reject this argument for two reasons. First, Schmuck clearly stated that a lesser included offense should be defined solely by reference to the statutory elements of the offenses, ignoring how they may play out in practice. 489 U.S. at 716-17 ("Since offenses are statutorily defined, that comparison is appropriately conducted by reference to the statutory elements of the offenses in question, and not, as the inherent relationship approach would mandate, by reference to conduct proved at trial regardless of the statutory definitions."). Second, we find persuasive an unpublished opinion of this Court, in which we rejected this very argument under exactly the same circumstances. See United States v. Davenport, No. 89-5461, 1990 WL 116742, at * 3 (4th Cir. Jul. 26, 1990) (unpublished), "not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Murphy, 35 F.3d at 148 (citations omitted).
 
 
 36
 Without taking any credibility determinations into account, the sum of Goodman's argument is that there was no evidence to show either that Goodman committed the attack or that he had a weapon. We disagree. The evidence was sufficient to support Goodman's convictions on Counts 1 and 2. McNeil's testimony at trial explicitly implicated Goodman as the assailant. After the attack, Houston testified that he saw a restrained Goodman attempting to lunge at him with an unidentified object in his hand. Both McNeil and Houston testified that it was well known that Goodman kept a razor blade in his mouth, and, according to Houston, Goodman "would eat with it and everything and you wouldn't ever know it was there." (J.A. 73.) Additionally, Dr. Paul testified to the extent and severity of Houston's wounds, which were consistent with infliction by a razor blade. Based on this evidence, a reasonable juror could conclude that Goodman assaulted Houston with a dangerous weapon with the intent to do bodily harm, 18 U.S.C.A. Sec. 113(f), and that this assault resulted in serious bodily injury, 18 U.S.C.A. Sec. 113(c).
 
 
 37
 Finally, Goodman challenges the sufficiency of the evidence to convict him of possessing an unauthorized weapon in a prison. The gravamen of his argument is that the Government failed to introduce evidence showing that a razor blade is an unauthorized weapon. This argument, however, is belied by the clear evidence at trial. Delores Lee, a corrections officer at Lorton Prison, testified at trial about the incident in question.
 
 
 38
 Q: Are the prisoners authorized to possess or receive razor blades at the maximum security facility?
 
 
 39
 A: Only for shaving. They have disposable razors that are issued to them for shaving.
 
 
 40
 Q: And how do inmates get those razors?
 
 
 41
 A: Well, they are issued. They get them once a week ... [f]rom the supply officer that brings them to the cell block....
 
 
 42
 Q: What do those razors look like?
 
 
 43
 A: Like little Bic disposable one-sided razors.
 
 
 44
 Q: They are not two-sided or straight-edge razors?
 
 
 45
 A: No. No.
 
 
 46
 (J.A. 83.) From this evidence, a reasonable juror could easily have determined that any straight-edge razor blade that Goodman was carrying was unauthorized. Therefore, we also affirm Goodman's conviction under Va.Code Ann. Sec. 53.1-203(4), as assimilated by 18 U.S.C. Sec. 13.
 
 V.
 
 47
 For the foregoing reasons, we reject Goodman's constitutional and statutory objections to his convictions. Additionally, we find that the evidence is sufficient to support the convictions on all three counts. Accordingly, the convictions are affirmed.
 
 AFFIRMED
 
 
 *
 At oral argument, counsel for Goodman seemed to argue that Count 1, assault resulting in serious bodily injury was a lesser included offense of Count 2, assault with a dangerous weapon with intent to do bodily injury. Goodman argued that, in his case at least, Count 1 was a lesser