**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tony Jerome MURPHY, Defendant–
Appellant.**

No. 93–5803.

United States Court of Appeals,
Fourth Circuit.

Argued July 19, 1994.

Decided Sept. 16, 1994.

**ARGUED:** Randolph Brian Monchick, Asst. Federal Public Defender, Raleigh, NC, for appellant. John Samuel Bowler, Asst. U.S. Atty., Raleigh, NC, for appellee. **ON BRIEF:** J. Douglas McCullough, U.S. Atty., Raleigh, NC, for appellee.

Before WILKINS and LUTTIG, Circuit Judges, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge TRAXLER wrote the opinion, in which Judge WILKINS and Judge LUTTIG joined.

## OPINION

TRAXLER, District Judge:

Tony Murphy ("Murphy") was indicted for violation of 18 U.S.C.A. §§ 111(a)(1), (b), 1114 (West Supp.1994), i.e., assault with a dangerous weapon upon Deputy Travis Baker ("Baker"), a person assisting a federal employee.* Murphy moved unsuccessfully to dismiss the indictment for want of jurisdiction, contending that Baker, a state employee, was not protected by §§ 111, 1114. The district court denied this motion, concluding that it had jurisdiction to entertain prosecution of the suit. The case proceeded to trial, and Murphy was convicted of assault with a deadly weapon. Murphy now appeals, again contending that the district court lacked jurisdiction to entertain this case and that the evidence was insufficient to sustain the conviction. Concluding that §§ 111, 1114 apply to Baker and that the evidence was sufficient to sustain the conviction, we affirm.

### I.

We recite the facts in the light most favorable to the Government. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Murphy was a federal prisoner who was detained at the Lenoir County Jail ("LCJ") in Lenoir, North Carolina, pursuant to a contract that the United States Marshal Service ("USMS") maintained with the LCJ for the custody of federal prisoners. Pursuant to the contract, LCJ provided the USMS with services with respect to the transportation and detention of federal prisoners in return for a fee. While at LCJ, Murphy intentionally threw a container of liquid at Baker. In an attempt to restore order to the ensuing row Murphy created, Baker ordered all inmates in the cell-block back into their cells; and all except Murphy complied. Baker unsuccessfully attempted to convince Murphy to leave the

area and to return to his cell. Murphy proved implacable; cajoling by three officers proved fruitless. Murphy was warned that failure to comply would result in his forcible removal.

Eventually, Baker approached Murphy in a nonthreatening manner and placed his hand on Murphy's shoulder to guide him toward his cell. Murphy, however, grabbed Baker and forcibly slammed Baker's head into the steel bars lining the cell-block. With his fists, Murphy then repeatedly pummeled a dazed and prostrate Baker. The beating did not subside until Officer Heath ("Heath") sprayed mace into Murphy's face. As a result of Murphy's vicious attack, Baker was compelled to seek emergency medical care and undergo surgery for a cracked orbital lobe. His convalescence precluded him from resuming his duties for three weeks.

On appeal, Murphy raises two contentions. First, he contends that a local jailor such as Deputy Baker who is employed by the State of North Carolina is not protected by §§ 111, 1114; thus, Murphy maintains, the district court lacked federal jurisdiction. Second, he asserts that the evidence was insufficient to sustain the conviction. We address these contentions seriatim.

### II.

Section 111 provides in part:

(a) **In general.**—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;

. . . .

shall be fined under this title or imprisoned not more than three years, or both.

(b) **Enhanced penalty.**—Whoever, in the commission of any act described in subsection (a), uses a deadly or dangerous weapon, shall be fined under this title or imprisoned not more than ten years, or both.

---

* Murphy was also indicted for violation of 18 U.S.C.A. §§ 111(a)(1), 1114 (West Supp.1994) for simple assault of a person assisting a federal employee. The district court properly treated the count for simple assault as a lesser included offense.

18 U.S.C.A. § 111 (West Supp.1994). Thus, by its terms, § 111 applies to persons delineated under 18 U.S.C.A. § 1114. Section 1114, in turn, designates persons protected by § 111 and includes "any United States marshal or deputy marshal or person employed to assist such marshal or deputy marshal...." *See* 18 U.S.C.A. § 1114 (West Supp.1994). Murphy's attack on federal jurisdiction is composed of two assertions. First, he maintains that the phrase "employed to assist" in § 1114 is ambiguous. Second, he posits that if the phrase is not ambiguous, because Baker is a local jailor and employed by the State of North Carolina, he does not fall within the protective ambit of §§ 111, 1114. Neither assertion has merit.

### A.

We begin, as we must, by examining the statutory language, bearing in mind that we should give effect to the legislative will as expressed in the language. *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988). Generally, in examining statutory language, words are given their common usage. *See Palestine Info. Office v. Shultz,* 853 F.2d 932, 938 (D.C.Cir.1988). Courts are not free to read into the language what is not there, but rather should apply the statute as written. *See DeSisto College, Inc. v. Town of Howey–in–the–Hills,* 706 F.Supp. 1479, 1495 (M.D. Fla.), *aff'd,* 888 F.2d 766 (11th Cir. 1989) (per curiam). If the statutory language is unambiguous, then provided that "the statutory scheme is coherent and consistent," our inquiry terminates. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Accordingly, if the statutory language "is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). The language being facially clear and "within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms." *Id.* Thus, if the statutory language

is not ambiguous, then we do not engage in interpretation of the statute, but merely in its application. Of course, a distinction exists between interpreting any perceived ambiguity in the terms of a statute and resolving any ambiguities by canons of interpretation and the threshold determination that the challenged language is ambiguous and requires interpretation. *See* 2A George Sutherland *Statutory Construction,* § 46.01, at 81 (5th ed.1991). While cautioning lower federal courts not to stray beyond the plain language of unambiguous statutes, the Supreme Court has also explained that departure from the statutory language may be permitted in limited circumstances. *See, e.g., Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (literal application yields if it would defeat the statutory purpose); 2A George Sutherland *Statutory Construction,* § 46.07, at 126 (collecting exceptions). Interpreting a statute is a legal issue that successive courts freely review, and hence our review is plenary. *See EEOC v. American & Efird Mills, Inc.,* 964 F.2d 300, 302 (4th Cir.1992) (per curiam).

With these principles in mind, we turn to the challenged language, "employed to assist." The term "employ" has a broad sweep and is expansively used: "employ" means "to make use of," "to use advantageously," "to use or engage the services of," "to provide with a job that pays wages or a salary," as well as "to devote to or direct toward a particular activity or person." *Webster's Ninth New Collegiate Dictionary* 408 (9th ed.1990). The term "assist" means "to give support or aid." *Id.* at 109. Application of the articulated legal precepts compels us to conclude that the challenged language is not ambiguous, and thus we use the plain meaning of the words comprising the challenged language to apply the statute. The common usage of "employed to assist" means that a person is being used to help a federal agent, and that is exactly what transpired in this case. Here, Baker was aiding the USMS in furtherance of its official duties. This scenario is precisely what is contemplated by the term "employed to assist." While in this case a contract existed between the USMS and LCJ, such a contract is not a

requirement before §§ 111, 1114 apply to protect persons such as Baker. Having employed the common usage of the statutory terms and having concluded that no ambiguity exists in the challenged language and that the language is facially clear, we proceed to the statute's application.

### B.

Murphy asserts that even if the language is not ambiguous, §§ 111, 1114 do not apply to embrace Baker, a state employee. We conclude, however, that circuit precedent forecloses this assertion and foreshadows the conclusion that Baker is indeed cloaked by these statutes. In *United States v. Chunn,* 347 F.2d 717 (4th Cir.1965), we rejected reasoning similar to that which Murphy seeks to advance and held that a state employee who was assisting federal agents in performance of their official duties was protected by §§ 111, 1114. In *Chunn,* the defendants were convicted of assaulting a state employee pursuant to §§ 111, 1114. *Id.* at 720. The defendants appealed, contending that their convictions should be reversed because the victim was not a federal agent, but rather was a state employee who merely aided federal agents and was "on loan" to a federal agency. *Id.* at 720–21. Eschewing this contention, we reasoned that the protection afforded federal agents under §§ 111, 1114 should likewise protect persons assisting federal agents:

> The record completely supports the ... finding that [the state employee], at the time of the assault[,] was a person assisting agents of the internal revenue service and entitled to the protection afforded by 18 U.S.C. § 1114.
>
>  . . . .
>
> Regardless of whether [the state employee], as an employee of the State of North Carolina who was on loan at the time of the assault to the [IRS] by agreement of the two agencies, had any official duties is immaterial, since he was in fact assisting federal agents on said occasion in the performance of their official duties.

*Id.* (footnotes omitted). *Chunn* held, therefore, that criminal defendants could be properly indicted pursuant to §§ 111, 1114 for assaulting a state employee who was "on loan" to a federal agency and was assisting federal agents in the scope of their official duties.

The reasoning of *Chunn* has been followed by other circuits. For instance, in *United States v. Schaffer,* 664 F.2d 824 (11th Cir. 1981) (per curiam), the Eleventh Circuit concluded that §§ 111, 1114 embraced a private security guard who was working pursuant to a contract with the United States marshals. Schaffer, a federal prisoner, was taken to a hospital; and while there, he assaulted a guard of a private security service that operated pursuant to a contract with the United States marshals to provide security for federal prisoners while receiving medical treatment. *Id.* at 825. Schaffer was subsequently convicted of assaulting the guard pursuant to §§ 111, 1114. *Id.*

Schaffer appealed his conviction, maintaining that §§ 111, 1114 applied exclusively to persons directly employed by the United States. *Id.* Because the security guard was not an employee of the federal government but executed his duties under a contract with the United States marshals, Schaffer contended that his conviction pursuant to these sections could not be sustained. *Id.* The Eleventh Circuit, however, held that Schaffer was properly convicted under §§ 111, 1114:

> The contention that the provision of 18 U.S.C. § 1114 ... is limited to persons directly employed by the United States itself is wholly without merit.... The trial court instructed the jury "that a person employed to assist the United States [m]arshal ... is one of the employees referred to in [§ 1114]." The instruction was correct.

*Id.* (second alteration in original). *Schaffer,* therefore, held that a private employee assisting the United States marshals pursuant to an employment contract fell within the protective ambit of §§ 111, 1114.

In *United States v. Williamson,* 482 F.2d 508 (5th Cir.1973), the Fifth Circuit likewise held that assault upon a local law enforcement agent participating in a federal raid fell within the ambit of § 111. In *Williamson,* the defendant attempted to flee from the

scene of an arrest; and in the process, his automobile struck a state narcotics agent. The Fifth Circuit affirmed his conviction pursuant to § 111, opining that because the state agent "was acting in cooperation with and under control of federal officers, in effecting an arrest for violation of the federal drug laws, assault against him was within the coverage of § 111." *Id.* at 512. *Chunn, Schaffer,* and *Williamson* recognize that the protection afforded by these statutes naturally extends to other persons engaged to help federal agents in the furtherance of their official duties.

Applying these principles, we conclude that 18 U.S.C. §§ 111, 1114 embrace Baker, thereby rendering this prosecution in federal court proper. In the instant case, as in *Chunn* and *Williamson,* a state employee was assaulted in the course of assisting federal agents. Also here, as in *Schaffer,* Baker was working pursuant to a contract between state and federal agencies. The *Chunn* court concluded that §§ 111, 1114 applied to protect the state employee. The principles articulated in *Chunn, Schaffer,* and *Williamson* lead to the inexorable conclusion that §§ 111, 1114 apply to Baker because he was assisting federal agents in performing their official duties. Baker was serving precisely the same federal interest that a marshal would serve while maintaining custody of a federal prisoner; and this comports with the Supreme Court's observation that § 111 applies "to protect *both* federal officers *and federal functions,*" *United States v. Feola,* 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975) (second emphasis added). Protecting Baker thus advances the objective articulated in *Feola* that the statutes are designed to safeguard federal functions. That Baker was not "directly controlled" by a federal agent or that a federal agent was not present does not diminish our reasoning or alter the result; neither the statutes nor the decisional law require that Baker be "directly controlled" by a federal agent before the protection of §§ 111, 1114 applies. Whether a federal agent was directly controlling Baker, or even present, is a difference without a distinction. Baker was working pursuant to a contract with the USMS and assisting it in its official duties; therefore, he is clothed with the protective

mantle of §§ 111, 1114. The federal statutes applying, the district court had jurisdiction over this action.

III.

■ Proceeding to the merits, Murphy contends that the evidence was insufficient to sustain the conviction of assault with a dangerous weapon. In *United States v. Johnson,* 324 F.2d 264, 266 (4th Cir.1963), we concluded that virtually any object that can be used or attempted to be used to inflict grave physical injury constitutes a dangerous weapon. Thus, in *Johnson* we held that a chair was a dangerous weapon because it was held aloft and brought down on the victim's head, thereby having the potential to cause serious bodily injury. *Id.* Assessing whether an object constitutes a dangerous weapon hinges "[n]ot [on] the object's latent capability alone," but also on the manner in which the object is used. *Id.* For instance, in *United States v. Gholston,* 932 F.2d 904, 905 (11th Cir.1991), the court concluded that a desk constituted a dangerous weapon for purposes of § 111 because it was overturned on the victim. The decisional law reveals that many objects, even those seemingly innocuous, may constitute dangerous weapons. For instance, in *Johnson,* we canvassed the case law and noted that a garden rake, *Johnson,* 324 F.2d at 265 (citing *Eagleston v. United States,* 172 F.2d 194, 198 (9th Cir.), *cert. denied,* 336 U.S. 952, 69 S.Ct. 882, 93 L.Ed. 1107 (1949)), shoes, *id.* (citing *Medlin v. United States,* 207 F.2d 33 (D.C.Cir.1953), *cert. denied,* 347 U.S. 905, 74 S.Ct. 431, 98 L.Ed. 1064 (1954)), and a wine bottle, *id.* (citing *Thornton v. United States,* 268 F.2d 583 (D.C.Cir.1959)), constituted dangerous weapons. Our review of whether an object constitutes a dangerous weapon hinges on the statute and is therefore a legal inquiry subject to plenary review. *See United States v. Coyle,* 943 F.2d 424, 426 (4th Cir.1991) (interpreting applicability of criminal statute is a legal issue). Because the steel bars here have the potential to inflict grave physical harm, and indeed, in this instance did, we have no difficulty in concluding that they constitute a dangerous weapon. In concluding that the steel bars are a dangerous weapon, we see no distinc-

tion that in this case the bars were stationary while Baker's head was thrust against them.

With respect to sufficiency of the evidence, we must sustain the conviction if "*any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). If there is substantial evidence to support the verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government, then we must affirm. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir.1983), *cert. denied*, 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984), and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe, *United States v. Garcia*, 868 F.2d 114, 116 (4th Cir.), *cert. denied*, 490 U.S. 1094, 109 S.Ct. 2439, 104 L.Ed.2d 995 (1989). The evidence adduced at trial consisted of the testimony of Baker, who testified that Murphy slammed his head into the steel bars and beat him with his fists. This testimony was corroborated by Heath, who stated that Murphy attacked Baker and forcibly shoved his head into the cell bars. Apart from the testimony of two eyewitnesses, the Government also submitted still photographs taken from the video camera taping the scene of the assault. There was, therefore, physical evidence to bolster the eyewitness testimony. A reasonable jury could certainly evaluate the testimony of two eyewitnesses and the photographs to conclude that Murphy was guilty beyond a reasonable doubt of assault with a dangerous weapon by virtue of his shoving Baker's head into the steel bars. We hold that the evidence was sufficient to sustain the conviction of assault with a dangerous weapon.

### IV.

The case law reveals unequivocally that §§ 111, 1114 apply to Baker. Because the federal statutes applied, the district court properly heard the case; and thus the mo-

tions for dismissal of the indictment and the judgment of acquittal were properly denied. Additionally, we hold that the steel bars, in the manner in which they were used, constituted a dangerous weapon. We also conclude that the evidence was sufficient to sustain the conviction of assault with a dangerous weapon. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED.*