**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4962

FERNANDO TEJADA,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CR-97-4-S)

Argued: December 4, 1998

Decided: January 21, 1999

Before HAMILTON and LUTTIG, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Lynam Dowling, Olney, Maryland, for Appellant.
James G. Warwick, Assistant United States Attorney, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Fernando Tejada appeals his conviction for conspiracy to distribute and to possess with intent to distribute cocaine. See 21 U.S.C. §§ 841(a)(1) and 846. We affirm.

I

In late 1987 or early 1988, Wallace Miles met Tejada in the Baltimore, Maryland, area after a friend told him that Tejada sold cocaine. At the time of their first meeting, Tejada sold Miles a kilogram of cocaine for $17,000. Miles continued to purchase cocaine from Tejada in one kilogram quantities through 1991, when Miles lost contact with Tejada.

In late March or early April 1993, Miles resumed purchasing cocaine from Tejada. Miles purchased between a quarter of a kilogram and two kilograms of cocaine on a biweekly basis from late March or early April 1993 until the summer of 1995. Most of the transactions followed the same modus operandi . Miles would page Tejada, entering a certain code for the quantity of cocaine he desired. Tejada would either call Miles to approve the deal or page Miles to confirm that he had received the message. Tejada would then call Miles and inform him of the time and place to complete the transaction. Generally, Miles paid for the cocaine in cash, although on some occasions Tejada would extend Miles credit for a week at a time.

During at least four transactions, one occurring in New York City and the other three in Baltimore, Maryland, Miles personally completed the transaction with Tejada. At other times, Damon Jackson, one of Miles' lieutenants, personally completed the transaction with Tejada. Jackson was responsible for delivering the cocaine to the street dealers. The street dealers would then sell the cocaine on the

2

streets of Baltimore, Maryland. The street dealers would turn the proceeds of their sales over to Jackson who would turn the proceeds over to Miles.

On January 8, 1997, a federal grand jury sitting in the United States District Court for the District of Maryland returned an indictment, which charged Tejada as follows:

> From in or about January, 1993 until in or about August, 1995 in the State and District of Maryland, the Southern District of New York, and elsewhere, FERNANDO TEJADA the defendant herein, willfully, knowingly and unlawfully did combine, conspire, confederate and agree with persons whose names are to the grand jury known and unknown to distribute and to possess with intent to distribute quantities of mixtures or substances containing detectable amounts of heroin, a Schedule I Narcotic Controlled Substance, and cocaine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). 21 U.S.C. § 846.

Following a jury trial in the Northern Division of the District of Maryland, the jury returned a guilty verdict, but found that Tejada only conspired to distribute and to possess with intent to distribute cocaine.[1] The district court sentenced Tejada to 230 months' imprisonment, and Tejada noted a timely appeal.

II

Tejada contends that his Sixth Amendment right to be tried by a fair and impartial jury was violated by the jury selection plan utilized by the United States District Court for the District of Maryland. We disagree.

_____

[1] The government introduced evidence at trial suggesting that Tejada participated in a conspiracy to distribute and to possess with intent to distribute heroin. However, the jury, through its verdict, found that the government's evidence did not prove this fact beyond a reasonable doubt.

At trial, prior to voir dire, Tejada, a native of the Dominican Republic, moved to strike the venire assembled in his case[2] on grounds that none of its members were of Hispanic descent and that almost ten percent of the nation's population was Hispanic. The district court denied the motion as "frivolous under settled law."

The United States District Court for the District of Maryland is composed of two federal judicial divisions, the Northern Division and the Southern Division. The jury selection plan for the District of Maryland randomly selects venire members from voter registration lists in the counties comprising the Northern Division and the Southern Division, respectively. The voter registration lists are taken from data available after the most recent statewide general election.

According to Tejada, the population of the Southern Division is 5.2% Hispanic and the population of the Northern Division is 1.17% Hispanic.[3] This disparity, Tejada argues, requires that venire members be selected on a district-wide rather than a division-wide basis. Tejada theorizes that, had the venire in his case contained citizens of counties within the Southern Division, his ability to have Hispanics on his jury would have been increased. Thus, he argues, the District of Maryland's jury selection plan systematically excludes the vast majority of Maryland's Hispanic population from jury service in the Northern Division.

The Sixth Amendment grants criminal defendants the right to trial "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." U.S. CONST. amend. VI. In furtherance of this constitutional command, the Jury Selection and Service Act provides in relevant part that "all litigants in Federal courts entitled to trial by jury shall have the right to . . . petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

_____

[2] The term "venire" is defined as "[t]he group of citizens from whom a jury is chosen in a given case." Black's Law Dictionary 1556 (6th ed. 1990).

[3] The government does not take issue with these statistics.

4

A jury selection plan violates this Sixth Amendment right if the plan does not draw venire members from a fair cross section of the community. See Taylor v. Louisiana, 419 U.S. 522, 530 (1975). In order to establish a prima facie case that a jury selection plan violates the Sixth Amendment's fair cross section requirement, a defendant must demonstrate: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. See Duren v. Missouri, 439 U.S. 357, 364 (1979). If the defendant proves a prima facie case, the government then bears the burden of proving that attainment of a fair cross section is incompatible with a significant governmental interest. See id. at 368.

Here, the government does not dispute that the first prong of a prima facie case is met, i.e., that Hispanics are a distinctive group in the community. In support of the second prong, Tejada argues that the selection of venire members in the Northern Division of the District of Maryland solely from voter registration lists in the Northern Division results in a statistically unacceptable underrepresentation of Hispanics on Northern Division venires as compared to the Hispanic population in the District of Maryland as a whole. According to Tejada, the relevant "community" for purposes of his Sixth Amendment rights is the entire District of Maryland rather than just the Northern Division.

Tejada's argument is without merit because there is no constitutional right to a venire drawn from an entire judicial district, rather than from one of its divisions. See, e.g., Ruthenberg v. United States, 245 U.S. 480, 482 (1918) ("[T]he proposition[that the Sixth Amendment was violated where the jury was not drawn from the whole district] disregards the plain text of the Sixth Amendment, the contemporary construction placed upon it by the Judiciary Act of 1789 (1 Stat. 73, 88, c. 20, § 29) expressly authorizing the drawing of a jury from a part of the district, and the continuous legislative and judicial practice from the beginning."); United States v. Bahna, 68 F.3d 19, 25 (2d Cir. 1995) (relying on Ruthenberg and holding that the Sixth Amendment does not require that potential jurors be drawn

5

from an entire judicial district despite demographic differences between divisions). Only in those cases where the use of a division instead of the entire judicial district constitutes gerrymandering, resulting in the systematic exclusion of a "distinctive group" from participation in any jury selection system, is there a potential violation of the Sixth Amendment. See, e.g., United States v. Test, 550 F.2d 577, 594 (10th Cir. 1976) ("the partitioning of a district into jury divisions is sanctioned by the statute [28 U.S.C.§§ 1863(a) and 1869(c)], and it is clearly not unconstitutional, absent evidence that some cognizable group has been systematically excluded by`gerrymandering' the division lines").

Tejada presented no evidence of gerrymandering with respect to the division lines in the District of Maryland. Furthermore, the division of districts by counties, which is the method used by the District of Maryland in creating its two divisions, is a practice that has long been accepted. See, e.g., United States v. Guy, 924 F.2d 702, 705-07 (7th Cir. 1991); see also, 28 U.S.C. § 1869(e) ("in judicial districts where there are no statutory divisions," a division can include "such counties, parishes, or similar political subdivisions surrounding the places where the court is held").

Thus, properly framed, Tejada's Sixth Amendment challenge must be limited to challenging the process/procedure employed for selecting venire members from within the Northern Division of the District of Maryland. Even properly framed, Tejada's challenge still fails, because "the use of voter registration lists[in the selection of venire members] `has been consistently upheld against both statutory and constitutional challenges, unless the voter list in question had been compiled in a discriminatory manner.'" Truesdale v. Moore, 142 F.3d 749, 755 (4th Cir.) (quoting United States v. Cecil, 836 F.2d 1431, 1445 (4th Cir. 1988) (en banc)), cert. denied, 119 S. Ct. 380 (1998); see also United States v. Lewis, 10 F.3d 1086, 1089-90 (4th Cir. 1993) (approving use of non-discriminatory voter registration lists in jury selection plan). The record contains absolutely no evidence that the voter registration list for the Northern Division of the District of Maryland was compiled in a discriminatory manner. Accordingly,

6

Tejada's claim that his Sixth Amendment right to be tried by an impartial jury was violated must be rejected.[4]

III

Tejada also contends that the district court's instructions to the jury resulted in a constructive amendment of the indictment. We disagree.

Without objection, the district court instructed the jury in relevant part as follows:

> It's up to you to decide, based on all of the evidence, whether or not the material in question was, in fact, cocaine or heroin. In doing so, you should consider all the evidence in the case, direct or circumstantial, which may aid in the determination of the identity of the substance.
>
> You must unanimously agree that the substance or substances in question were cocaine, heroin or both, before Mr. Tejada can be found guilty. That is, if half of you think it's cocaine and the other half think heroin only, you couldn't convict him. It has to be unanimous agreement on either heroin or cocaine or both. You could unanimously agree that he had conspired to distribute both.

Because Tejada failed to object to this instruction, we review only for plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). Under Olano, to establish plain error, Tejada must demonstrate (1) an error that is (2) clear or obvious, (3) that affects substantial rights, i.e., is prejudicial to the defendant, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. See id. at 732.

_____

[4] Tejada also presses a similar claim under the equal protection component of the Fifth Amendment. This claim must be rejected because Tejada cannot show that the complete absence of Hispanics on his jury resulted from purposeful discrimination. Cf. Batson v. Kentucky, 476 U.S. 79, 94-95 (1986) (equal protection claim requires showing that defendant was member of a cognizable racial group excluded from the jury and that exclusion was result of purposeful discrimination).

7

In this case, the indictment charged Tejada with conspiracy to distribute and to possess with intent to distribute both heroin "and" cocaine. The district court instructed the jury that it must unanimously agree on whether the object of the conspiracy was either heroin or cocaine or both.

Tejada argues that by instructing the jury that it could convict him of conspiring to distribute cocaine or heroin or both, the district court constructively amended the indictment by broadening the possible bases for his conviction beyond that presented by the grand jury. In other words, Tejada argues the district court's instruction erroneously allowed the jury to pick and choose either or both substances as long as they were unanimous, instead of finding guilt only as to both substances as charged in the indictment. Tejada's argument is without merit.

A constructive amendment occurs through a jury instruction only if the instruction "broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994) (en banc). For a constructive amendment to have occurred, therefore, the district court's instruction challenged by Tejada must have exposed him to criminal "`charges that are not made in the indictment against him.'" Id. at 711 (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)). Because the indictment charged a conspiracy to distribute and to posses with intent to distribute cocaine, we must conclude a fortiori that the challenged instruction did not expose Tejada to criminal charges not made in the same indictment.[5]

_____

[5] Tejada also makes a related argument based on his theory that, because the indictment charged a heroin "and" cocaine conspiracy, heroin is an essential element that the jury had to find in order to convict him. In this regard, Tejada argues that the district court committed reversible error by failing to inquire into and resolve the jury's cocaine-only verdict, because heroin was an element of the offense and the special verdict exposed him to double jeopardy. Tejada's argument is without merit. First, as explained above, the jury did not have to find that heroin was the object of the conspiracy in order to convict Tejada as long as it unanimously found that cocaine was the object of the conspiracy. Second, any double jeopardy argument is premature inasmuch as the government has not sought to reindict Tejada for the same alleged heroin conspiracy.

8

IV

Tejada contends that there is insufficient evidence in the record to support his conspiracy conviction. We disagree.

A defendant challenging the sufficiency of the evidence to support a conviction bears "a heavy burden." United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995). In reviewing the sufficiency of the evidence supporting a criminal conviction, our role is limited to considering whether "there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). We must bear in mind that"[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). Further, "if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." Id. Reversal for insufficient evidence is reserved for the rare case "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978). In sum, we "may not overturn a substantially supported verdict merely because [we] find the verdict unpalatable or determine that another, reasonable verdict would be preferable." United States v. Burgos , 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997).

To prove a conspiracy to distribute and to possess with intent to distribute cocaine, the government must establish that: (1) an agreement to distribute and to possess with intent to distribute cocaine existed between two or more persons, other than government agents; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. See id. at 857. In addition to proving the existence of a conspiracy beyond a reasonable doubt, the government must also prove a defendant's connection to the conspiracy beyond a reasonable doubt. See id. at 858. To satisfy that burden, the government need not prove that the defendant knew the particulars of the conspiracy or all of his conspirators. See id. Once it has been shown that a conspiracy exists, the evidence need only establish a "slight connection" between the defendant and the conspiracy to support conviction. See id. at 861. "The term `slight' does not describe the quantum of evidence that the government must elicit in order to establish the conspiracy, but rather the

9

connection that the defendant maintains with the conspiracy." Id. Because "a conspiracy is clandestine and covert, . . . a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced." Id. at 857. The circumstantial evidence can include "a variety of conduct, apart from selling narcotics." Id. at 859.

In this case, the government's evidence established that Tejada sold large quantities of cocaine to Miles over a two-year span. Tejada personally completed some of these transactions with Miles, others he personally completed with Jackson, one of Miles' lieutenants. In light of this evidence, we conclude the evidence was more than sufficient to convict Tejada of conspiracy to distribute and to posses with intent to distribute cocaine. See id. at 862.

V

Tejada also raises one other claim that he contends should be resolved in his favor. He contends that the district court abused its discretion in admitting evidence of preconspiracy cocaine sales in violation of Federal Rule of Evidence 404(b). We have reviewed this claim and find it to be without merit. Accordingly, for the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

10