**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-4093**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RICHARD DAVIS,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  John A. Gibney, Jr., Senior District Judge.  (3:23−cr−00135−JAG−1)

Argued:  February 12, 2026                              Decided:  April 24, 2026

Before DIAZ, Chief Judge, and WILKINSON and HEYTENS, Circuit Judges.

Reversed, vacated, and remanded by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Heytens joined.  Judge Wilkinson wrote a dissenting opinion.

**ARGUED:**  Robert James Wagner, ROBERT J. WAGNER PLC, Richmond, Virginia, for Appellant.  Shea Gibbons, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Erik S. Siebert, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

Richard Davis, the former director of a mental health counseling company, appeals his convictions for two counts of health care fraud. After a bench trial, the district court found Davis guilty of scheming to defraud Medicaid by overbilling for counseling services on two specific dates.

But the evidence was insufficient to prove that the bills submitted on those two dates were actually false. So we must reverse the convictions.

I.

A.

Davis owned and directed Innovative Family Services, LLC, a Medicaid-funded mental health service provider for at-risk youth. As the clinical director, Davis was "responsible for assuring that everyone within the company [was] complying [with] Medicaid billing guidelines." Joint Appendix (J.A.) 777.

Innovative ran several programs, including therapeutic day treatment, which was an after-school program to help children with emotional and behavioral issues. During day treatment, licensed counselors provided individual and group counseling and helped at-risk youth work on "problem-solving, anger management, community responsibility, increased impulse control, [and] appropriate peer relations." J.A. 173.

Innovative could seek reimbursement from Medicaid for certain day-treatment activities. As relevant here, the Department of Medical Assistance Services, which administers Virginia's Medicaid program, permitted reimbursement for face-to-face

treatment, some planning activities, and "care coordination," which is the "sharing of information among [the] health care providers . . . involved with an individual's health care." J.A 143, 173–74. But time spent transporting recipients, documenting contacts, and monitoring behavior during class wasn't reimbursable.

The Department required counselors to bill their day treatment in "units." J.A. 175. Counselors could bill one unit when they provided between 2 and 2.99 hours of reimbursable services, two units when they provided between 3 and 4.99 hours, and three units when they provided 5 hours or more. But they couldn't bill more than three units per day, even if they spent more than 5 hours on reimbursable tasks.

## B.

Innovative faced semi-regular audits. A 2019 audit of day-treatment records revealed significant issues in patient files and sparked a federal investigation into potential health care fraud.

Following the investigation, a grand jury returned a six-count indictment charging Davis with "knowingly and willfully execut[ing] and attempt[ing] to execute a scheme and artifice to commit health care fraud," in violation of 18 U.S.C. § 1347. J.A. 14, 16. The indictment alleged that Davis submitted several claims for reimbursement for day treatment (and intensive in-home treatment—another program not at issue in this appeal) that either didn't occur or didn't meet the proper billing requirements.

Crucially for this appeal, each count corresponds to a different date that Davis allegedly caused false claims to be submitted to Medicaid. The two counts at issue here

3

allege that Davis caused false bills to be submitted for care coordination not rendered on two dates: April 30, 2018 (count three) and May 9, 2018 (count four).

C.

A bench trial ensued. Several Innovative employees testified about the hours they worked and how Davis instructed them to bill their time.

Employees generally worked from 11:30 a.m. to 7:30 p.m. They used the afternoon session, from around 3:00 or 4:00 to 6:00 or 7:00 to complete their face-to-face day treatment. And, at Davis's instruction, they completed care coordination and planning from 11:30 to 1:30 or 2:00, when the children were absent. Several employees testified that Davis gave them templates to use for timekeeping, and one testified that the template had the 11:30 to 1:30 time filled in already.

Counselors typically marked their hours on a "daily log" or in "progress notes." J.A. 12, 15, 826–27. Another Innovative employee collected those logs or notes and transferred the time into units for Medicaid billing purposes.

The testimony of two counselors—Kasi Loney and Hazel Bell—is especially relevant because they provided services on the two dates in question.

1.

Loney logged eight hours of day treatment on April 30, 2018, which translated to three units billed to Medicaid.

Loney's progress note for that day reflects a "[s]ession [t]ime" from 11:30 a.m. to 7:30 p.m. J.A. 1590. Loney logged those hours at the direction of her supervisor, who Davis trained. And she logged eight hours even though actual therapy didn't start until the

4

afternoon, typically beginning around 3:00 and "wrap[ping] up between 6:00 and 7:00 o'clock." J.A. 739.

Loney didn't document care coordination on April 30 specifically, but she testified that it typically occurred in the morning, from 11:30 until 2:00. She admitted that she didn't always complete care coordination, but she would still put the full eight hours on her progress note every day.

2.

Bell logged six hours of day treatment on May 9, 2018, amounting to three units billed to Medicaid.

Bell's daily log that day shows two hours of care coordination from 11:30 to 1:30 and four hours of day therapy from 3:00 to 7:00. She billed two hours of care coordination at Davis's instruction.

Bell explained that she simultaneously worked as an elementary school teacher during the day, so she couldn't have completed two hours of Innovative work at the same time. But she could still get Innovative work done on breaks and during lunch. Even though she couldn't bill the full two hours of care coordination, she still marked that time on her progress note to avoid Davis questioning why her "note changed" or "look[ed] different." J.A. 585.

Davis knew Bell also worked as a teacher and "told [her] to continue doing everything [she] was supposed to do, and we should be fine." J.A. 649. But Bell clarified that Davis "didn't direct [her] to not work the two hours and bill for them." J.A. 617–18.

5

D.

The district court found Davis guilty on two of the six counts, involving the April 30 and May 9 billing records. As the court found, Davis "set up the system that resulted in the billing of two hours per day per client" and so "he had to know that that was going to result in charges being sent to Medicaid that were not legitimate." J.A. 1397.

Davis moved for a judgment of acquittal and a new trial, both of which the district court denied. This appeal followed.

II.

Davis contends that the evidence wasn't sufficient to support his convictions. He also makes several legal arguments, challenging the district court's interpretation of the health care fraud statute, 18 U.S.C. § 1347.[1] But when a defendant challenges a verdict for sufficiency, we must start there. *United States v. Gallagher*, 90 F.4th 182, 188 (4th Cir. 2024). And "[w]e review the sufficiency of the evidence de novo." *United States v. McLean*, 715 F.3d 129, 137 (4th Cir. 2013).

We "must sustain the verdict if, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, . . . the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Graham*, 796 F.3d 332, 373 (4th Cir. 2015) (citation modified).

---

[1] Davis contends that the district court (i) failed to apply the proper mens rea, specific intent; (ii) erroneously found that he "knowingly" committed the two health care fraud offenses; and (iii) improperly relied on group billing practices to support his convictions.

6

But if the evidence is insufficient to support such a finding, the defendant is entitled to a judgment of acquittal. *Gallagher*, 90 F.4th at 188–89.

## III.

"To sustain a conviction under 18 U.S.C. § 1347, the government was required to prove beyond a reasonable doubt that [Davis] knowingly and willfully executed a scheme to defraud." *McLean*, 715 F.3d at 137–38. But the government also had to prove beyond a reasonable doubt that Davis "caused to be submitted . . . false claims for [day-treatment] services not actually rendered" on the two dates in question: April 30, 2018 and May 9, 2018. J.A. 16.

That's where the government faltered. It failed to present sufficient evidence to prove beyond a reasonable doubt that the counselors falsely billed three units to Medicaid on those two dates.

## A.

The relevant inquiry here isn't whether Loney's and Bell's treatment records (the progress notes or daily logs) contained false or inaccurate information. That may very well be true.

But Medicaid fraud isn't concerned with internal timekeeping records. There's only fraud if the bills submitted to Medicaid reflect "false or misleading claims for payment." *United States v. Elfenbein*, 144 F.4th 551, 560 (4th Cir. 2025). So we must determine whether there's sufficient evidence that both Loney and Bell failed to provide *at least five hours of covered services* to reflect the three units billed on April 30 and May 9.

7

1.

Start with Loney. She billed three units to Medicaid on April 30. As long as she completed at least five hours of reimbursable work to reflect the three units billed, there's no fraud.

Loney testified that she typically completed face-to-face treatment for between three and four hours. And she testified that care coordination and planning usually took place for two-and-a-half hours, from 11:30 to 2:00.

Both are reimbursable tasks. So for example, if Loney provided four hours of day treatment on April 30 and only one hour of care coordination, that would get her to the five hours necessary to bill three units. So too if she provided three hours of treatment and two hours of care coordination.

The government never asked Loney how much time she spent providing counseling on April 30. And while the government asked why she didn't document care coordination on that day, it never asked whether she in fact completed reimbursable work during the midday period. So we're left with the government's speculation that Loney didn't provide at least five hours of covered services on April 30. That's not how proof beyond a reasonable doubt works.

It was the government's burden to show that Davis (through his employee Loney) committed fraud on the date alleged in the indictment. While we must view the evidence in the government's favor, "[t]he voids in the proof" here are too great. *United States v. Van Fossen*, 460 F.2d 38, 41 (4th Cir. 1972).

We must reverse Davis's conviction on count three.

8

2.

Now, Bell. She billed three units to Medicaid on May 9. So again we ask: did the government prove beyond a reasonable doubt that Bell didn't complete at least five hours of reimbursable work that day? As with Loney, the answer is no.

Bell testified that she didn't—and couldn't—provide two full hours of care coordination as a general rule because of her teaching job. But she documented four hours of day treatment on May 9, from 3:00 to 7:00, which the government did not challenge. And she was generally available to do Innovative work on breaks and during lunch. So if she completed at least one hour of care coordination on that day, she would have notched the five hours necessary to bill three units.

Yet again, the government failed to elicit any testimony or other evidence that Bell *didn't* complete one hour of care coordination that day. All the government showed is that she couldn't complete the full two hours. But that doesn't prove beyond a reasonable doubt that Bell did not provide five hours of reimbursable services on May 9.

So we must reverse Davis's conviction on count four as well.

B.

A brief word about our colleague in dissent. Our friend focuses on systematic or general billing practices, noting that "[t]here was ample evidence to suggest . . .a *general practice* of explicitly directed fraudulent billing." Dissent at 16 (emphasis added). In the dissent's view, it would have been "fruitless" to elicit testimony about how Loney and Bell spent the midday period on the two dates in question because "[n]either . . . could have

9

possibly recalled what they did for two hours on a particular day more than six years ago." *Id.* at 17.

That's precisely the point. Loney and Bell were government witnesses. And rather than allege a conspiracy to defraud, the government sought to prove that Loney and Bell committed fraud on *specific* dates with *specific* students. Yet when called to testify, neither swore to anything of the kind, even as they conceded that their internal logs and records may have contained false information about their general billing practices.

True, "the government's evidence does not need 'to exclude every reasonable hypothesis other than that of guilt.'" Dissent at 15 (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954)). But it must still offer affirmative evidence sufficient to convict. Given the government's charging decisions, a whiff of fraud in the air isn't enough.

\* \* \*

We reverse for insufficient evidence only where "the prosecution's failure is clear." *United States v. Ashley*, 606 F.3d 135, 138 (4th Cir. 2010) (citation modified). Here, it is. We therefore reverse Davis's convictions, vacate his sentence, and remand to the district court with instructions to enter a judgment of acquittal.[2]

*REVERSED, VACATED, AND REMANDED*

---

[2] Because Davis prevails on his sufficiency of the evidence challenge, we needn't reach his remaining arguments. *Gallagher*, 90 F.4th at 188.

WILKINSON, Circuit Judge, dissenting:

A defendant carries a heavy burden when he challenges the sufficiency of the evidence supporting his conviction. To prevail, he must demonstrate that "the evidence adduced at trial could [not] support *any* rational determination of guilty beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67 (1984) (emphasis added). Richard Davis has not met his burden here.

After a four-day bench trial in which eighteen witnesses testified, the district court carefully considered the evidence and found Davis guilty of two of the six counts of health care fraud that were charged in the indictment. Rather than defer to the district court's judgment, however, the majority decides for itself that reasonable doubts exist regarding Davis's guilt. In doing so, it demands a standard of proof that will prove insurmountable in far too many cases of health care fraud, all to the detriment of Medicaid and the public fisc. I respectfully dissent.

I.

Therapeutic day treatment (TDT) is a Medicaid program designed to help at-risk youth address their emotional and behavioral issues. Medicaid reimburses service providers based on the units of time they spend providing medically necessary, reimbursable TDT services. Three to five hours of care corresponds to two units of service while five or more hours of care corresponds to three units of service.

Davis's company, Innovative Family Services, LLC (IFS), operated an afterschool program providing TDT services to children in Virginia. Group counseling sessions at IFS would last for three or four hours, meaning Davis could bill Medicaid for two units of

11

service for each child that participated—usually six to eight children per group. But Davis was interested in "max billing," J.A. 870, 906–07, so he instructed his employees to log another two hours of care in the middle of the day for each child that received counseling. By doing so, Davis could bill Medicaid the maximum of three units of service for every child, every day.

This practice was troubling for a couple of reasons. The most glaring issue was that Davis expected his employees to log these two extra hours of care "no matter what the counselor actually did during that time period." J.A. 801; *see also* J.A. 782. For example, one employee testified that she "always" logged two hours of care in the middle of the day for each child she counseled and that if she logged anything less, Davis would have questioned her "on why [her] note changed." J.A. 583, 585. In fact, one of the timekeeping templates employees were instructed to use had this two-hour midday period already filled in. Billing Medicaid for an additional unit of service regardless of whether additional services were rendered or medically necessary is, of course, fraudulent.

In fairness, Davis told his employees to prepare for their group counseling sessions during this midday period, and his employees generally did use the time to document their clients' progress, coordinate their clients' care with other service providers, and plan activities for their group counseling sessions. The problem? For one thing, Medicaid categorically does not reimburse providers for time spent on documentation. For another, care coordination could be billed to Medicaid only for the particular child whose care was being coordinated. Davis was billing this time to Medicaid for every child that attended the counseling sessions. So too with planning. Medicaid reimburses only the time a provider

12

spends planning "individualized" programs and interventions for a child, J.A. 173, yet Davis was billing this time to Medicaid for every child that attended the counseling sessions. The result: Davis was systematically billing Medicaid a third unit of service for every child that attended counseling even though few, if any, children were receiving five hours of reimbursable TDT services. That too is fraudulent.

Davis insists that he believed he was allowed to group bill for planning and that Medicaid's regulations on the issue were ambiguous. But there is nothing ambiguous about the requirement that planning be "individualized." J.A. 173. And even if Medicaid's regulations were "somewhat ambiguous," "fraud defendants [do not] benefit from *Chevron*-like safe harbors." *United States v. Elfenbein*, 144 F.4th 551, 568 n.14 (4th Cir. 2025). It is up to the trier of fact to determine what the best interpretation of an arguably ambiguous provision is, *id.* at 567 & n.14, and here the district court found that the government's reading of the applicable Medicaid regulations was "the only objectively reasonable interpretation," J.A. 479 (quoting *United States v. Harra*, 985 F.3d 196, 215 (3d Cir. 2021)).

At any rate, the fact remains that Davis directed his employees to log two hours for the midday period every day, for every child, without regard to how much time they spent on group planning. That meant IFS was overbilling Medicaid irrespective of whether group billing for planning was permissible. Consider, for example, an IFS employee who spends one hour on documentation and one hour coordinating the care of two children. If the corresponding group counseling session lasts three hours and includes eight children, IFS should bill Medicaid two units of service for each of the eight children. Under Davis's

13

"max billing" strategy, however, IFS would bill *three* units of service per child, or eight additional units in total.

## II.

The two counts of health care fraud Davis was convicted of are emblematic of this fraudulent practice. In both cases, IFS employees were logging the same midday hours for every child they counseled that day without regard to the work they engaged in.

## A.

The first count concerns the services Kasi Loney provided to a child, A.J., on April 30, 2018. Loney logged eight hours of therapeutic treatment that day: 11:30 a.m. to 7:30 p.m. Loney testified that she was directed to log eight hours every day for every child she counseled even though her counseling sessions would last for only three or four hours. The remainder of Loney's workday consisted of transporting children—which is not reimbursable—and the two or two-and-a-half hours that she had for planning, care coordination, and documentation—which, again, cannot be billed to every child or, in the case of documentation, cannot be billed at all.

Loney's daily progress note for A.J. does not reflect any time spent coordinating A.J.'s care or planning for the counseling session. IFS should thus have only billed Medicaid for two units of service.

## B.

The second count concerns the services Hazel Bell provided to another child, J.R., on May 9, 2018. Bell logged six hours of therapeutic treatment that day: 11:30 a.m. to 1:30 p.m. and 3:00 p.m. to 7:00 p.m. Bell testified that Davis directed her to log two hours for

14

the midday period every day for every child she counseled. However, Bell explained that she worked as an elementary school teacher during the day, making it impossible for her to spend 11:30 a.m. to 1:30 p.m. on her IFS work. At most, she was able to spend only "some" time during her lunch break and free period working on IFS matters. J.A. 584. Davis knew that Bell's teaching job conflicted with her IFS work, but he told her "to continue doing everything [she] was supposed to do, and [they] should be fine." J.A. 649.

Bell's progress note for J.R. does not reflect that she spent any time coordinating J.R.'s care. In terms of planning, the progress note says only that Bell "planned an activity in reference to developing teamwork." J.A. 1521. Bell logged the same two-hour planning period for at least two other children that day. IFS should thus have only billed Medicaid for two units of service.

### III.

Despite all this inculpatory evidence, the majority holds that no rational trier of fact could have found Davis guilty of health care fraud. In its view, because the government did not conclusively rule out the possibility that Loney and Bell provided A.J. and J.R. with five hours of reimbursable TDT services, it failed to prove beyond a reasonable doubt that IFS falsely billed Medicaid for three units of service on the days in question. In so holding, the majority exceeds the limited scope of our appellate review and unduly raises the government's burden of proof.

To establish guilt beyond a reasonable doubt, the government's evidence does not need "to exclude every reasonable hypothesis other than that of guilt." *Holland v. United States*, 348 U.S. 121, 139 (1954); *see also United States v. Burgos*, 94 F.3d 849, 866 (4th

15

Cir. 1996) (en banc). Where the government's case rests on testimonial or circumstantial evidence, it is for the trier of fact—not us—"to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Holland*, 348 U.S. at 140. So long as the trier of fact "is convinced beyond a reasonable doubt, we can require no more." *Id.* Yet "more" is exactly what the majority demands.

Rather than "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government," *Burgos*, 94 F.3d at 863, the majority speculates that Loney and Bell *could* have spent an hour or two coordinating A.J. and J.R.'s care on the days in question. Again, "[w]e cannot . . . find the evidence of guilt insufficient simply because it failed to disprove every possible hypothesis regarding" Davis's "purported innocence." *Id.* at 866. In any event, no evidence supports the majority's conjecture. The relevant progress notes do not so much as mention care coordination, let alone indicate that Loney and Bell spent an hour or more engaging in it. That is consistent with Loney's testimony that she did not engage in care coordination every day for every child and that she never performed ten hours of care coordination in a week. Given Bell's teaching position, she had even less time to spend providing care coordination than Loney did.

When this evidence is considered in conjunction with Davis's direction to log two hours of care without regard to the services rendered, what more is required before a rational trier of fact could find Davis guilty beyond a reasonable doubt? There was ample evidence to suggest that there was a general practice of explicitly directed fraudulent billing during the time period in question. The majority faults the government for not eliciting

16

testimony about how exactly Loney and Bell spent that midday period, but doing so would have been fruitless. Neither of them could have possibly recalled what they did for two hours on a particular day more than six years ago. If the majority feels that a witness's recall is insufficient, that is simply another matter for the trier of fact to weigh. It in no way justifies usurping the factfinder's role in reversing the conviction.

Moreover, any evidentiary deficiency on this front makes no difference: "[I]f the evidence supports different, reasonable interpretations, the [trier of fact] decides which interpretation to believe." *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994); *see also Jackson v. Virginia*, 443 U.S. 307, 317 n.8 (1979). At the end of the day, the majority "overturn[s] [the] substantially supported verdict merely because it finds the verdict unpalatable." *Burgos*, 94 F.3d at 862. That is the very thing it cannot do. *Id.* at 862–63.

Even if Loney and Bell had spent their midday hours coordinating the care of A.J. and J.R. as the majority suggests, all that would mean is that IFS falsely billed a third unit of service to Medicaid for every other child they counseled that day. According to the majority's reasoning, however, Davis could not be convicted of those crimes either. For any given child, he could simply claim that Loney and Bell spent their midday period coordinating *that* child's care. We are left with a situation in which Davis was clearly overbilling Medicaid, but no rational trier of fact could find him guilty of fraud because the government cannot prove to the majority's satisfaction which children *in particular* he was submitting false claims for. That is just wrong. The infirmities to which the majority points are nothing more than issues of evidentiary weight for the factfinder to consider.

17

The exactitude that the majority requires is going to scuttle the ability of factfinders to draw particular inferences even from a pervasive general practice.

Billing an additional unit of service to Medicaid without regard to the services rendered is garden-variety health care fraud. IFS employees might on some days have spent five hours providing services to one or two children, but they could not have spent five hours providing services to every child they counseled, every day. Yet Davis directed his employees to log those hours anyway. The intended consequence of this practice was to systematically overbill Medicaid for services. A rational trier of fact could have found Davis guilty on that basis. He is not entitled to acquittal simply because the design of his fraudulent scheme makes it difficult to identify which particular children IFS was falsely billing for. *See United States v. Johnson*, 319 U.S. 503, 517–18 (1943) ("To require more or more meticulous proof than this record discloses that there were unreported profits from an elaborately concealed illegal business, would be tantamount to holding that skilful concealment is an invincible barrier to proof.").

IV.

Congress enacted the Medicaid program for good, humane, and sufficient reasons. It did not enact it to be bled by the persistent fraudulent activities evidenced in this case. Yet as a result of the majority's decision, Davis will now be able to retain the $200,000 in ill-gotten gains he had been ordered to return to Medicaid. Even more troubling is how the majority's decision will hamper Medicaid's recovery efforts in the future. This is no small matter. Medicaid recovers roughly one billion dollars a year from prosecuting fraud. *See*

18

Dep't of Health & Hum. Servs., *Medicaid Fraud Control Units Annual Report: Fiscal Year 2025*, at 2 (2026).

While the potential loss of these much-needed funds does not diminish Davis's right to be found guilty beyond a reasonable doubt, neither is it any reason to overlook "the deference owed to the trier of fact and, correspondingly, the sharply limited nature of" sufficiency-of-the-evidence review. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion). Accordingly, I would affirm the district court's well-reasoned judgment.