**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-4128**

UNITED STATES OF AMERICA,

>Plaintiff – Appellee,

v.

LAURA ANNE GALLAGHER,

>Defendant – Appellant.

**No. 22-4129**

UNITED STATES OF AMERICA,

>Plaintiff – Appellee,

v.

ANDREY NIKOLAYEVICH KALUGIN,

>Defendant – Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Senior U.S. District Judge. (1:21-cr-00043-TSE-1; 1:21-cr-00043-TSE-2)

Argued: September 22, 2023                                Decided: January 3, 2024

Before WYNN, QUATTLEBAUM, and HEYTENS, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Wynn and Judge Quattlebaum joined.

---

**ARGUED:** Courtney Roberts Forrest, KAISERDILLON PLLC, Washington, D.C.; Hani Bashour, CLEARY GOTTLIEB STEEN & HAMILTON LLP, Washington, D.C, for Appellants. Raizza Kristine Ty, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Ann Mason Rigby, Assistant Federal Public Defender, Alexandria, Virginia, Elizabeth A. Mullin, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Washington, D.C.; Matthew D. Slater, Maia Livengood, CLEARY GOTTLIEB STEEN & HAMILTON LLP, Washington, D.C., for Appellant Andrey Kalugin. Jessica D. Aber, United States Attorney, Richmond, Virginia, Morris R. Parker, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

TOBY HEYTENS, Circuit Judge:

A foreign service officer and a noncitizen were convicted of conspiring to fraudulently obtain U.S. citizenship for the noncitizen and making false statements in their efforts to do so. We conclude the evidence was sufficient to support each defendant's convictions and thus reject the argument they are entitled to a judgment of acquittal. But because the jury was allowed to consider a legally inadequate theory on one count and an erroneous evidentiary ruling prevented the defendants from offering certain evidence on the remaining two counts, we vacate the convictions and remand for further proceedings.

I.

Andrey Kalugin and Laura Gallagher met in 2013, when they were students at the University of California, Davis School of Law. Kalugin was in the United States on a student visa; Gallagher is an American citizen.

The nature of Kalugin and Gallagher's relationship and how it evolved was a major issue at trial. What is undisputed, however, is that they married in June 2015, just over a year after graduating from law school and a month and a half before Kalugin's student visa was set to expire. Soon after, they signed and submitted government forms to get Kalugin a green card based on his status as Gallagher's spouse.

In April 2016, Kalugin and Gallagher moved from California to Virginia, where Gallagher was training to become a foreign service officer. By the end of May, however, Kalugin had left Virginia, returning to California and obtaining a new California driver's license that listed a California address.

3

In July 2016, Kalugin flew back to Virginia (with a ticket Gallagher paid for) for a green card interview with an immigration officer. Kalugin was granted conditional residency the same day, and flew back to California two days later.

The two then set about having Kalugin naturalized as a citizen. Because of Gallagher's job, Kalugin was eligible for expedited naturalization under 8 U.S.C. § 1430(b), which waives the required residency period for noncitizens whose U.S. citizen spouses are "in the employment of the Government of the United States" and "regularly stationed abroad." Gallagher filled out the required document (called a Form N-400) for Kalugin, had Kalugin sign it in August 2016, and submitted the form in September 2016.

In December 2016, Gallagher moved to Mexico to begin her first tour as a foreign service officer. Kalugin remained in California. Fourteen months passed with little action on Kalugin's naturalization application. Then, in February 2018, Kalugin flew to Virginia for an interview with an immigration officer. After that interview, Kalugin took the citizenship oath and was issued a naturalization certificate. Kalugin immediately applied for and soon obtained a United States passport.

Kalugin then set off for Mexico himself, but stayed less than a month. About three months after Kalugin left Mexico for good, Gallagher filed for divorce in California, listing the separation date as May 1, 2016 (more than two years earlier). The divorce was finalized soon after.

In 2019, a foreign service officer filed a complaint about Gallagher's conduct during Kalugin's naturalization process. That complaint led to an investigation by the State Department's diplomatic security service.

4

In 2021, a federal grand jury charged Kalugin and Gallagher with three felonies. Count 1 accused them of conspiring to obtain naturalization and proof of U.S. citizenship for Kalugin by making false statements and submitting fraudulent documents, thus violating 18 U.S.C. § 371. The other two counts charged violations of 18 U.S.C. § 1425(a), which makes it a crime to "knowingly procure[ ]" either "the naturalization of any person, or documentary or other evidence of naturalization or of citizenship" "contrary to law." Count 2 accused Kalugin and Gallagher of doing so by making four "materially false, fictitious, and fraudulent statements and representations" on the Form N-400. Count 3 asserted another Section 1425(a) violation based on two other false statements Kalugin made during his final naturalization interview in 2018.

Kalugin and Gallagher pleaded not guilty and were tried together before a jury. The jury found them guilty on all counts. The district court sentenced Kalugin to six months of imprisonment followed by two years of supervised release, and Gallagher to 15 months of imprisonment followed by two years of supervised release. Kalugin's Section 1425(a) convictions also led to the mandatory revocation of his citizenship. See 8 U.S.C. § 1451(e).

## II.

We begin with the defendants' challenges to the sufficiency of the evidence. If they prevail on this point, none of the other issues matter. Under the Double Jeopardy Clause, the government gets one—but only one—"fair opportunity to offer whatever proof it [can] assemble." *Burks v. United States*, 437 U.S. 1, 16 (1978). If Kalugin and Gallagher are right the evidence failed as a matter of law, they are entitled to a judgment of acquittal without further proceedings. See *id.* at 18.

5

A.

Before diving into the sufficiency challenges, we must define the relevant pool of evidence. Kalugin makes two tries at convincing us we must disregard some evidence from the full trial record. Neither succeeds.

First, Kalugin asserts we should not consider various statements Gallagher made that the government introduced in its case in chief because those statements were inadmissible hearsay when offered against him. This Court has rejected similar arguments, holding that a reviewing court considering a sufficiency challenge must consider "all the evidence considered by the jury, both admissible and inadmissible." *United States v. Simpson*, 910 F.2d 154, 159 (4th Cir. 1990); accord *Lockhart v. Nelson*, 488 U.S. 33, 40 (1988). We see no basis for a different result here.[1]

Second, Kalugin asks us to limit ourselves to evidence presented during the government's case in chief and ignore any evidence he or Gallagher presented after their mid-trial motion for judgment of acquittal. As Kalugin admits, the usual rule is the opposite—that is, where a criminal defendant presents evidence after losing a mid-trial motion for judgment of acquittal, the mid-trial motion is deemed withdrawn and a reviewing court considers both sides' proof when faced with a post-trial sufficiency challenge. See *United States v. Heller*, 527 F.2d 1173, 1173 (4th Cir. 1975) (per curiam).

---

[1] At oral argument, Kalugin suggested we could nonetheless grant a new trial based on the district court's allegedly erroneous admission of the same statements. See Oral Arg. 11:39–13:20. That argument is doubly forfeited because Kalugin made no objection when the statements were offered at trial nor any such argument in his opening appellate brief. See *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

But Kalugin insists the normal rules do not apply when—as here—multiple defendants are tried together. In that situation, Kalugin asserts, we may not consider any evidence offered by any defendant.

To be sure, the D.C. Circuit has adopted a rule that looks something like the one Kalugin proposes. That court refuses to consider "co-defendant testimony in evaluating the sufficiency of the evidence against the defendant," even if the defendant opted to present a defense. *United States v. Lawrence*, 471 F.3d 135, 140–41 (D.C. Cir. 2006) (discussing *Cephus v. United States*, 324 F.2d 893 (D.C. Cir. 1963), and *United States v. Don Johnson*, 952 F.2d 1407, 1411 (D.C. Cir. 1992)). According to the D.C. Circuit's most recent decision addressing the issue—itself now more than 17 years old—this rule derives from a two-step analysis. First, a defendant who is "forced or coerced into presenting a case in response to a co-defendant's testimony incriminating him" should not be deemed to have waived a mid-trial challenge to the sufficiency of the government's evidence standing alone. *Id.* at 140 (quotation marks removed). Second, because it often will be difficult for a reviewing court to "determine whether a co-defendant's testimony motivated the defendant to put on a defense," courts should refuse to consider such testimony in all circumstances. *Id.* at 140–41. Thus, the D.C. Circuit's prophylactic categorical rule.

As Kalugin acknowledges, this Court has never adopted such a rule. Indeed, Kalugin points to no other court that has adopted the D.C. Circuit's absolutist approach, and even a panel of that court has expressed grave doubts. See *Lawrence*, 471 F.3d at 140–41 (describing various problems with the rule and saying the panel only adheres to it because "[o]ne three-judge panel . . . does not have the authority to overrule another").

7

We do not foreclose the possibility that some criminal defendants could establish that the sole reason they presented evidence is because a co-defendant did so and that, in those circumstances, a reviewing court should consider only the government's evidence in assessing a sufficiency challenge. But Kalugin does not argue he was coerced into presenting a defense by Gallagher's choice to do so, and the events at trial refute any such suggestion. Kalugin confirmed his intent to call witnesses moments after Gallagher said she intended to do so and before Gallagher had presented any evidence or even revealed what evidence she planned to present. Because there is no hint Kalugin was coerced into offering his own evidence by Gallagher's choice to do so, we adhere to our general rule: By presenting evidence, Kalugin abandoned any future argument the government's case-in-chief was inadequate, and we consider the full trial record in assessing his sufficiency challenge. See *Heller*, 527 F.2d at 1173; accord *United States v. Thomas*, 987 F.2d 697, 702–04 (11th Cir. 1993) (reviewing courts may consider evidence presented by a co-defendant for any count on which the defendant also presented evidence).

### B.

Convicted defendants who challenge the sufficiency of the evidence against them face "a heavy burden." *United States v. Davis*, 75 F.4th 428, 437 (4th Cir. 2023) (quotation marks removed). We must view the evidence in the light "most favorable to the prosecution" and assume the jury resolved all credibility disputes or judgment calls in the government's favor. *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003). We must uphold the jury's verdict if it is supported by "substantial evidence," which means "evidence that a reasonable finder of fact could accept as adequate and sufficient to support

8

a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006). Applying those standards, we conclude the sufficiency challenges here lack merit.

1.

Only Kalugin challenges the sufficiency of the evidence on Count 1, which accused him and Gallagher of conspiring to obtain citizenship for Kalugin by making false statements and submitting fraudulent documents. To prove that charge, the government had to show: "(1) the existence of an agreement, (2) an overt act by one of the conspirators in furtherance of [their] objectives, and (3) an intent on the part of the conspirators to agree, as well as to defraud the United States." *United States v. Tedder*, 801 F.2d 1437, 1446 (4th Cir. 1986). Kalugin insists the government failed to prove the first and third elements, "agreement and conspiratorial intent to defraud." Kalugin Br. 14. We disagree.

One witness recounted Gallagher saying she and Kalugin "were separated, but that they were continuing his citizenship process *in some agreement* prior to obtaining a divorce." JA 340 (emphasis added). Another asked Gallagher if she was "staying married so [Kalugin could] get his citizenship" and Gallagher responded "yes." JA 411. Kalugin and Gallagher also worked together on completing the various steps of the naturalization process. A reasonable jury could find that this evidence, along with the rest of the government's proof, showed beyond a reasonable doubt that Kalugin and Gallagher intentionally made an agreement to defraud the government. See *United States v. Rafiekian*, 991 F.3d 529, 547 (4th Cir. 2021) ("[T]he existence of a tacit or mutual

9

understanding between conspirators is sufficient evidence of a conspiratorial agreement." (quotation marks removed)). Nothing more was required.

2.

We likewise reject both defendants' challenges to the sufficiency of the evidence underlying Count 2, which focused on false statements on the Form N-400. Although Count 2 alleged four lies, Kalugin and Gallagher insist we may consider only one when assessing their sufficiency challenge: Kalugin's statement "that he had resided at a residence in Arlington, Virginia from April 2016 through the time of his interview in February 2018" even though he was "living in California." JA 45. We need not decide whether the attempt to limit our inquiry in this way has merit. Instead, we conclude the evidence was sufficient to support a conviction based solely on that statement.

To secure a conviction on Count 2, the government had to prove Kalugin and Gallagher procured Kalugin's naturalization by knowingly lying about material facts. See *Maslenjak v. United States*, 582 U.S. 335, 338 (2017) (discussing 18 U.S.C. § 1425(a), the statute underlying Count 2). Although Kalugin and Gallagher resist conceding it, the jury would have been well-justified in finding Kalugin knowingly lied about where he was living between May 2016 (when he returned to California and obtained a California driver's license) and February 2018 (when he was naturalized).

A reasonable jury also could have concluded that lie was about a material fact. Facts are material if they "would have mattered to an immigration official," either "because they would have justified denying naturalization or would predictably have led to other facts warranting that result." *Maslenjak*, 582 U.S. at 338.

10

To be sure, that Kalugin and Gallagher were living across the country from each other when they submitted the Form N-400 would not have—by itself—justified denying naturalization. But there was enough evidence to permit the jury to conclude the disclosure of this information "would have prompted reasonable officials, seeking only evidence concerning citizenship qualifications, to undertake further investigation" and that this investigation "would predictably have disclosed some" "disqualifying fruit." *Maslenjak*, 582 U.S. at 349–50 (quotation marks removed). The immigration officer who interviewed Kalugin testified his responsibilities included verifying Kalugin intended to live abroad with Gallagher and with her in the United States when she returned, as required for his expedited naturalization. See 8 U.S.C. § 1430(b); 8 C.F.R. § 319.2(b)(1). Knowing Kalugin and Gallagher were living apart while "here in the United States," the officer added, "would make a difference" to him. JA 508. Experience confirms that at least some immigration officers conduct further investigation upon learning married couples are not living together while in the United States. See, *e.g.*, *Manor v. Nielsen*, No. 3:18-cv-00522-AC, 2020 WL 4457824, *1 (D. Or. July 6, 2020) (describing investigation conducted after officer learned married couple was not living together), R. & R. adopted *Manor v. Sessions*, No. 3:18-cv-00522-AC, 2020 WL 4451043 (D. Or. July 31, 2020). The jury could have concluded such an investigation would predictably have disclosed that Kalugin neither intended to live abroad with Gallagher after he was naturalized nor with her in the United States upon her return. Cf. *United States v. Nepal*, 894 F.3d 204, 211 (5th Cir. 2018) (imagining how the "investigatory questions" that "practically write themselves" would

11

have predictably disclosed a disqualification). We thus reject Kalugin's and Gallagher's sufficiency challenges to Count 2.

3.

At various points, Kalugin suggests he is entitled to a judgment of acquittal "on all counts," which would include Count 3. Kalugin Br. 12. Because Kalugin develops "no separate argument" the evidence could not support that count, we do not consider that possibility. *Mowery v. National Geospatial-Intel. Agency*, 42 F.4th 428, 434 n.6 (4th Cir. 2022). We thus reject Kalugin's sufficiency challenge to Count 3 as well.

III.

Despite holding the evidence was sufficient to support the jury's verdict, we vacate both defendants' convictions on Count 2. We do so because the jury was allowed to consider a legally insufficient theory, and we cannot conclude it "necessarily credited" a sufficient one. *United States v. Hastings*, 134 F.3d 235, 242 (4th Cir. 1998).

As mentioned earlier, Count 2 charged Kalugin and Gallagher with violating 18 U.S.C. § 1425(a) by making four "materially false, fictitious, and fraudulent statements and representations" on the Form N-400. The jury returned a general verdict without specifying the statement(s) on which that verdict was based.

The problem is that, after the jury returned its verdict, the district court ruled one of the charged statements could not support a conviction. The second lie charged in the indictment was that "Kalugin falsely represented that he was married, when, in truth and in fact, as he then well knew, he had been separated from his spouse since May 2016." JA 45. Kalugin did so, the government contended, by checking a box on the

12

Form N-400 labeled "Married" rather than a different box labeled "Separated." JA 1951. In a post-trial order, however, the district court explained the government had been required to "prove that the selection of 'married' was false—not that another option was a more accurate or better choice." JA 1648. And because the representation that Kalugin and Gallagher were married when the form was submitted was "literally true," the district court held that statement "cannot support a conviction" under 18 U.S.C. § 1425. See JA 1648 (citing *Bronston v. United States*, 409 U.S. 352, 362 (1973)).

The government has not challenged the district court's ruling on this point, so we take that issue as settled. Instead, the government urges us to embrace the district court's further ruling that—despite the defect in the marital-status allegation—the defendants' convictions on Count 2 can stand "so long as there is sufficient evidence" for a conviction based on any of the other alleged false statements on the Form N-400. JA 1651. And because we have already held there was sufficient evidence to sustain Count 2 based on the lie about where Kalugin was living, see Part II(B)(2), *supra*, such a holding would lead to our rejecting this challenge as well.

But the government makes a labeling error in its characterization of the issue with the marital-status theory of Count 2, and this error leads it to urge applying the wrong legal standard.[2] To hear the government tell it, the issue is one of factual insufficiency—a type

---

[2] We reject the government's assertion this claim is forfeited and thus reviewed only for plain error. Kalugin and Gallagher argued in a pre-trial motion to dismiss that checking the box for married could not support a conviction for Count 2, raised the same argument again in their mid-trial motions for a judgment of acquittal, and unsuccessfully requested a special verdict form asking the jury which statement(s) supported their Count 2 (Continued)

of defect that, all agree, would trigger the general sufficiency standard applied by the district court. We conclude, however, that the problem is one of legal inadequacy, which requires use of a different standard. See *United States v. Moye*, 454 F.3d 390, 400 n.10 (4th Cir. 2006) (en banc) (noting the "contrast[ing]" analysis applied when a "factually unsupported theory of liability" is put to the jury, as compared to a "legally inadequate theory").

To see why, ask the following question: What evidence could have fixed the problem identified by the district court? The answer is simple: None. No amount of proof about the nature of Kalugin and Gallagher's relationship, their motives for getting married, or even their intent to deceive government officials could have changed that they were legally married when they submitted the Form N-400 and through the time of Kalugin's naturalization. The problem was not missing information; it was a defective charge.

A comparison with the Supreme Court's foundational cases clinches the point. The first, *Yates v. United States*, 354 U.S. 298 (1957), is the classic legal insufficiency case. There, a single-count indictment charged 14 defendants with conspiring: (1) "to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence"; and (2) "to organize . . . the Communist Party of the United States." *Id.* at 300. The Court determined the word "organize" "refers only to acts entering into the

---

convictions. The district court also considered—and rejected—the claim that its conclusion about the invalidity of the indictment's lie-about-marital-status theory required vacatur of the defendants' convictions on Count 2. Nothing more was needed to preserve the issue for our review. See *United States v. Ebersole*, 411 F.3d 517, 526 (4th Cir. 2005) (defendant preserves objection to jury instruction by making same substantive argument in pre-trial motion to dismiss and motion for acquittal).

creation of a new organization, and not to acts thereafter performed in carrying on its activities." *Id.* at 310. And because the Communist Party was "organized" in that sense "by 1945 at the latest," and the defendants were charged in 1951, the three-year statute of limitations made it impossible to prosecute them for conspiring to organize it. *Id.* at 304.

In contrast, *Griffin v. United States*, 502 U.S. 46 (1991), addressed a factual insufficiency problem. In *Griffin*, the defendant was charged with conspiring to achieve two unlawful objectives: "(1) impairing the efforts of the Internal Revenue Service (IRS) to ascertain certain taxes; and (2) impairing the efforts of the Drug Enforcement Administration (DEA) to ascertain forfeitable assets." *Id.* at 47. At trial, however, testimony from one of the government's anticipated witnesses "did not materialize" and there was no evidence to "connect" one of the defendants "to the DEA object." *Id.* at 48. The problem was "insufficiency of proof" rather than any legal defect with the charge. *Id.* at 58.

This situation is far closer to *Yates* than *Griffin*. Just as no added evidence in *Yates* could have changed that the Communist Party was organized long before the conduct charged in the indictment, no extra proof here could have changed that Kalugin and Gallagher were legally married during the relevant period. Unlike in *Griffin*, there was no missing witness—the government could have summoned any witness it wanted, and Kalugin and Gallagher still would have been married. And because they were married, it was legally impossible to convict them for making a false statement by checking the box for married on the Form N-400. Accord *United States v. Cone*, 714 F.3d 197, 214–15 (4th Cir. 2013) (concluding a count charging the defendants with violating counterfeiting law

15

by modifying products with genuine labels was legally inadequate because such conduct does not qualify as counterfeiting under the relevant statute).

*Griffin*'s explanation of why courts treat factual insufficiency and legal inadequacy differently underscores why this case falls on the latter side of the line. As *Griffin* points out, because "jurors are well equipped to analyze the evidence," they are unlikely to convict a defendant "on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient." 502 U.S. at 59–60 (emphasis and quotation marks removed). In contrast, "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law"— say, whether making a technically true but misleading statement like these defendants' checking only the "Married" box on the Form N-400, can violate 18 U.S.C. § 1425(a). See *Griffin*, 502 U.S. at 59. When faced with that sort of legal question, "there is no reason to think that [the jurors'] own intelligence and expertise will save them from . . . error." *Id.*

Because the jury was allowed to consider a legally inadequate theory, the verdict on Count 2 must be set aside unless the jury "necessarily credited" a legally adequate one. *Hastings*, 134 F.3d at 242. Put another way, "the conviction may be affirmed" only if the "evidence is such that the jury must have convicted the defendant on [a] legally adequate ground in addition to or instead of the legally inadequate ground." *Id.*

The district court reached no such conclusion, and neither can we. The other theories put to the jury on Count 2 were that Kalugin and Gallagher violated the statute by lying about where Kalugin lived or by lying about never having lied to a government official. As we have already explained, the jury could have found that Kalugin and Gallagher lied about

16

where Kalugin was living and that this lie was material. See Part II(B)(2), *supra*. But the jury *also* could have concluded Kalugin and Gallagher lied about their marital status (a lie whose materiality seems obvious) without crediting the government's less overwhelming evidence that the lie about where Kalugin was living was also material. The jury likewise could have found the only previous lie Kalugin and Gallagher concealed was having checked the "Married" box on the Form N-400—something that was, per the district court's unchallenged ruling, not a previous lie at all. Because it is "impossible to tell" if the jury found Kalugin and Gallagher guilty on Count 2 based on the legally inadequate theory or one of the other theories, their convictions on that count must be vacated. *Yates*, 354 U.S. at 312. We emphasize this disposition does not bar the government from seeking to retry Kalugin and Gallagher on Count 2. See *Burks*, 437 U.S. at 15–16.

## IV.

Our conclusion the convictions on Count 2 must be vacated leaves us with the question of what to do about Counts 1 and 3. Kalugin and Gallagher make two arguments for vacating those convictions as well. First, they say some evidence was admitted at trial only because of the legally inadequate theory charged in Count 2 and that evidence was prejudicial to their defense on Counts 1 and 3. Second, Kalugin and Gallagher assert the district court erred in excluding certain evidence they offered. We need not decide whether the first challenge, standing alone, would require vacating the jury's verdict on Counts 1 and 3. Instead, we hold the district court exceeded its discretion in excluding the defendants' evidence and we cannot say that error was harmless.

17

The government's theory at trial was that Kalugin and Gallagher's marriage was over by the spring of 2016 and that everything after that was part of a conspiracy to obtain immigration benefits. See JA 1362–63 (government arguing in closing argument that Kalugin and Gallagher "decided to separate" in April 2016 but remained "in agreement" about seeking Kalugin's naturalization). Seeking to rebut that claim, Kalugin and Gallagher each sought to introduce seemingly loving Facebook messages the two sent each other after Kalugin left Virginia to return to California, including those in which the couple sent photos, used emojis, or called each other pet names. The district court excluded those messages as inadmissible hearsay during trial, and reiterated that conclusion when denying a post-trial motion focused exclusively on its failure to admit the more limited set of messages offered by Kalugin.

This Court, of course, reviews a district court's evidentiary rulings for an abuse of discretion. See *United States v. Lighty*, 616 F.3d 321, 351 (4th Cir. 2010). But it is equally well-established that "[a] district court abuses its discretion when it . . . commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). And here the district court erred as a matter of law because many—if not all—of the proffered messages either are not hearsay or appear to fall within a valid hearsay exception.

Not everything a person says or writes is hearsay. Hearsay is an out-of-court statement offered "*to prove the truth of the matter asserted in the statement*." Fed. R. Evid. 801(c)(2) (emphasis added). If a statement is offered for any other reason, it is not hearsay and may not be excluded on that basis. See Fed. R. Evid. 802 (providing hearsay is generally not admissible but establishing no broad rule against out-of-court statements). A

18

classic example are statements offered for their effect on the listener. See *United States v. Simmons*, 11 F.4th 239, 263–64 (4th Cir. 2021). Such statements are not hearsay because their relevance does not depend on whether the declarant spoke the truth. Instead, they are admissible because they are offered to "establish the state of mind thereby induced" in the recipient or "to show the information which [the recipient] had as bearing on the reasonableness [or] good faith . . . of subsequent conduct." 2 McCormick on Evid. § 249 (8th ed.) (McCormick).

That is exactly what we have here. Whether Gallagher truly loved Kalugin when she wrote him saying she did, the messages were relevant to show what Kalugin could have believed about the state of the marriage based on what he was hearing from Gallagher. And the affectionate messages Kalugin sent Gallagher are similarly relevant to show the effect they would have had on her. In concluding otherwise, the district court "relie[d] on [an] erroneous . . . legal premise[]." *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022).

The district court also outpaced its discretion in concluding each defendant's expressions of their own affection fell outside the hearsay exception for statements of a "declarant's then-existing state of mind" under Rule 803(3).[3] A key step in the court's rationale for denying Kalugin's post-trial motion for a new trial was its conclusion that such statements were relevant exclusively to "support Kalugin's argument that he did not

---

[3] We assume for the sake of argument that all such statements satisfy the definition of hearsay in the first place. That said, it seems reasonably clear that Gallagher's reference to Kalugin as "my angel" (JA 2479) was not being offered to show he was, in fact, a supernatural being. See 2 McCormick § 250 (discussing "so-called 'implied assertions'" and explaining that "an out-of-court assertion is not hearsay if offered as proof of something other than the matter asserted" in the statement itself).

19

falsely select 'married' on the Form N-400." JA 1673. From there, the court reasoned that "Kalugin's state of mind in May" 2016, when some (but not all) of the messages were sent, "is not relevant to Kalugin's state of mind in August" 2016, when the Form N-400 was signed. JA 1675.

Both steps of that analysis encounter problems when the question becomes whether we should affirm the district court's judgment. For one thing, the messages were not, as the district court thought, exclusively relevant to Count 2 and the charges stemming from the Form N-400. Instead, the messages were relevant to rebutting the government's central contention at trial: that after Kalugin left Virginia to return to California in May 2016, the marriage was a sham and Kalugin and Gallagher were co-conspirators seeking to obtain his citizenship. That contention underlays the Count 1 conspiracy charge and puts the defendants' state of mind from spring 2016 at issue. And even if only the defendants' mental states in August and September of 2016 (when the Form N-400 was signed and submitted) were at issue, some of the Gallagher-offered messages the district court excluded mid-trial are from that exact period.

The district court also cited an unpublished opinion of this Court for the view that a statement may not be admitted under Rule 803(3) unless there are "no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his thoughts." JA 1674 (citing *United States v. Srivastava*, 411 Fed. Appx. 671, 684 (4th Cir. 2011)). No precedential opinion of this Court announces such a requirement, which appears nowhere in the text of Rule 803(3) or the advisory committee notes. Indeed, a leading treatise notes that "[t]he federal courts are in some conflict over" whether Rule 803(3)

20

authorizes a court "to exclude statements based on questionable motivation[s] of the declarant" or whether such matters go instead "only to the weight to be given to the statement by the jury." 2 McCormick § 274 n.8. We need not make any broad ruling on that point. Instead, we conclude that the district court's Rule 803(3) ruling (which, again, involved only the more limited set of messages offered by Kalugin rather than the broader set of messages offered by Gallagher) cannot be sustained given the other errors described above.

The same flaws in the district court's Rule 803(3) analysis infect the court's post-trial ruling that it would have excluded the set of messages offered by Kalugin under Federal Rule of Evidence 403. There too, the court described the Facebook messages as being "of limited relevance where they occurred months before the Form N-400 was filed." JA 1676. But this reasoning once again fails to grapple with how those statements cast doubt on the government's overarching theory of the case. The district court also reiterated its earlier conclusion that Kalugin's and Gallagher's "statements of affection" could not be considered by the jury for their "truth" value. *Id.* But the whole point of Federal Rule of Evidence 803 is to permit certain out-of-court statements to be offered for their truth value, so the district court's Rule 403 ruling depends on the validity of its Rule 803(3) ruling.

There is one final step in our analysis. Like most trial errors, "evidentiary rulings . . . are subject to harmless error review." *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997). Under that standard, the question is not "whether absent the error sufficient evidence existed to convict, but rather whether we believe it highly probable that the error did not affect the judgment." *United States v. Ibisevic*, 675 F.3d 342, 350 (4th Cir. 2012)

21

(quotation marks removed). This Court has identified "three decisive factors in making this determination: (1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the effects of the error; and (3) the closeness of the case." *Id.* (quotation marks removed).

Here, each factor points toward vacatur. First, both defendants' intent was a "central issue" on both remaining counts. *Ibisevic*, 675 F.3d at 350. To sustain Count 1 (the conspiracy charge), the government had to prove they intended to defraud the United States. And to prevail on Count 3 (the other 18 U.S.C. § 1425(a) charge), the government needed to show Kalugin did not intend to live with Gallagher while she was abroad or after her return to the United States.

Second, Kalugin's and Gallagher's in-court testimony about the state of their marriage did not mitigate the effects of the error. Quite the contrary. As this Court has recognized, excluding "the sole evidence that directly corroborated [a defendant's] own testimony" about what that defendant "believed" is particularly problematic given the risk that jurors may disregard self-serving testimony by criminal defendants. *Ibisevic*, 675 F.3d at 350.

The third factor—the closeness of the case—is "the single most important factor in a nonconstitutional harmless-error inquiry," *Ibisevic*, 675 F.3d at 352, and we think this case was close enough to warrant vacatur. See JA 792 (district court acknowledging the jury could have found this was not "a plot to gain naturalization by making false statements, which is essentially the Government's case"). Much of the evidence about Kalugin's intent was statements Gallagher made to others about her agreement with Kalugin. But the

22

government had to prove: (1) there really was an agreement (because Gallagher could not conspire with herself, see *Rogers v. United States*, 340 U.S. 367, 375 (1951)); and (2) Kalugin lacked the intent to live abroad with Gallagher and in the United States after she returned. The excluded messages thus could have countered the government's somewhat weak evidence about Kalugin's state of mind and corroborated his account of what "he believed was occurring." *Ibisevic*, 675 F.3d at 352. Finally, although we do not rule directly on the defendants' claim of prejudicial spillover—an alternative challenge to Counts 1 and 3—we note the risk that some evidence was admitted that would not have been without the legally inadequate theory of Count 2. Because we cannot conclude it is "highly probable that the [evidentiary] error did not affect the judgment," we vacate the convictions on Counts 1 and 3 as well. *Id.* at 350.[4]

\* \* \*

The judgments of the district court are vacated, and the cases are remanded for further proceedings consistent with this opinion.

*SO ORDERED*

---

[4] Our disposition makes it unnecessary to resolve Gallagher's other evidentiary claims, or her challenge to the district court's application of a four-point sentencing enhancement for fraudulently obtaining a United States passport.

23