**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 24-4266

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KHRIY SHERROD SIMON,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:23-cr-00355-WO-1)

_____

Submitted:  March 31, 2026                          Decided:  April 24, 2026

_____

Before WILKINSON and WYNN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:**  Louis C. Allen, Federal Public Defender, Ira Knight, Assistant Federal Public Defender, Ames C. Chamberlin, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Randall S. Galyon, Acting United States Attorney, Laura Jeanne Dildine, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After a three-day trial, a jury convicted Khriy Sherrod Simon of detaining and searching the person and property of another while impersonating a Special Agent of the Drug Enforcement Administration ("DEA"), in violation of 18 U.S.C. § 913. The district court sentenced Simon to 33 months' imprisonment. On appeal, Simon challenges the sufficiency of the evidence supporting his conviction and the district court's exclusion of out-of-court statements as hearsay. We affirm.

I.

On March 29, 2023, A.K. drove herself and her friend A.S. to PetSmart in Greensboro, North Carolina. A.K. was driving her black Honda Civic with a missing front bumper. As she was parking, Simon pulled up behind her in a way that blocked her ability to drive away. Wearing a mask and a bullet-proof vest, Simon approached the Civic in an aggressive manner, screaming and cursing at A.K. through the open window and ordering her put the car in park and put her hands on the dash. According to the trial testimony, Simon announced himself as a DEA agent multiple times and told the women that they and the car matched descriptions of suspects involved in a homicide and drug offenses. Simon took their IDs, made them get out of the car, and then searched the interior of the car and the trunk. He instructed the women to wait while he called his "boss," who later showed up at the scene driving a black Dodge Charger with tinted windows. After Simon talked to the boss, Simon returned to the women and told them they were not the suspects and were free to leave. The women reported the incident to police after they were released.

2

Simon's defense was that he worked with several bail bondsmen as an informant to help them locate fugitives, and that he had been instructed to be on the lookout for fugitives driving a black Honda Civic missing its front bumper. Simon contended he identified himself not as DEA, but as BEA, which he believed meant bail-enforcement agency or agent. The "boss" Simon brought to the scene was Remus Brown, the bondsman who had been looking for the fugitives with the bumperless Honda. Simon released the women after Brown told him they were not the fugitives.

## II.

We address Simon's challenge to the sufficiency of the evidence first because, "[i]f [he] prevail[s] on this point, none of the other issues matter." *United States v. Gallagher*, 90 F.4th 182, 188 (4th Cir. 2024). "We review the denial of a motion for acquittal de novo." *United States v. Jones*, 166 F.4th 428, 435 (4th Cir. 2026) (internal quotation marks omitted). "Convicted defendants who challenge the sufficiency of the evidence against them face a heavy burden." *Gallagher*, 90 F.4th at 190 (internal quotation marks omitted). We must "assume the jury resolved all credibility disputes or judgment calls in the government's favor," *id.*, and "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it," *Jones*, 166 F.4th at 435 (internal quotation marks omitted). "[S]ubstantial evidence . . . means evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Gallagher*, 90 F.4th at 190 (internal quotation marks omitted).

3

At trial, a primary issue was whether Simon announced himself as "BEA," which could mean bail enforcement agent or bail enforcement agency, or as a DEA agent. Although A.S., one of the victims, was not entirely clear as to whether Simon said "DEA" or "DA," she was 100 percent certain that he did not say "BEA." And the other victim, A.K., testified multiple times that Simon said "DEA." Simon, though, insisted that he said "BEA" and offered as proof his employment with Brown, who had engaged Simon to help locate fugitives. The jury was entitled to credit the victims' testimony over Simon's.

Moreover, contrary to Simon's contention, the victims' testimony that he said "DEA" was not the only evidence that Simon detained the victims and searched A.K.'s vehicle while impersonating a DEA agent. Rather, Simon's attire, demeanor, and behavior were consistent with the attire, demeanor, and behavior of a law enforcement officer. Simon argues, however, that his actions were consistent with all law enforcement officers, such as sheriff's deputies or state troopers, and, therefore, his impersonation of an officer was not a federal crime. But Simon also told the victims that they matched the descriptions of individuals involved in a drug and homicide case. Thus, mentioning a federal law enforcement agency tasked with enforcing drug laws made sense. Moreover, as the district court observed, the DEA acronym is commonly known and, therefore, the jury could infer that Simon used that acronym so that the victims would not question his authority to detain them and search A.K.'s vehicle.

Combining the direct evidence that Simon said "DEA" with Simon's attire, demeanor, and behavior at the scene, we conclude that the evidence was sufficient to prove

4

that Simon detained and searched the person and property of another while impersonating a DEA agent.

III.

We turn now to Simon's evidentiary challenge. At trial, Simon testified about the PetSmart incident on March 29 and about another incident that occurred on April 25, 2023, when Simon participated in the apprehension of a fugitive with Brown and another bondsman. Simon sought to testify about instructions to look out for certain people and vehicles given to him by Brown over the phone prior to those incidents, but the district court excluded that portion of his testimony as hearsay.

"We review a district court's evidentiary rulings for an abuse of discretion, and we will only overturn a ruling that is arbitrary and irrational." *See Jones*, 166 F.4th at 434 (internal quotation marks omitted). A district court abuses its discretion "when an evidentiary decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* (internal quotation marks omitted).

However, "even in the event of an error, we will not reverse if the error was harmless." *Id.* (internal quotation marks omitted). "Under that standard, the question is not whether absent the error sufficient evidence existed to convict, but rather whether we believe it highly probable that the error did not affect the judgment." *Gallagher*, 90 F.4th at 197 (internal quotation marks omitted). There are "three decisive factors in making this determination: (1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the effects of the error; and (3) the closeness of the case." *Id.* (internal quotation

5

marks omitted). "[T]he closeness of the case . . . is the single most important factor in a nonconstitutional harmless-error inquiry." *Id.* (internal quotation marks omitted).

"Not everything a person says or writes is hearsay. Hearsay is an out-of-court statement offered '*to prove the truth of the matter asserted in the statement.*'" *Id.* at 195 (quoting Fed. R. Evid. 801(c)(2)). And "[i]f a statement is offered for any other reason, it is not hearsay and may not be excluded on that basis." *Id.* Relevant here, "statements offered for their effect on the listener . . . are not hearsay because their relevance does not depend on whether the declarant spoke the truth." *Id.* Rather, "they are admissible because they are offered to establish the state of mind thereby induced in the recipient or to show the information which the recipient had as bearing on the reasonableness or good faith of subsequent conduct." *Id.* (citation modified).

Simon challenges the district court's exclusion of his testimony about the instructions he received from Brown prior to the incidents on March 29 and April 25, 2023. Simon contends that this evidence was not hearsay because the statements were not offered for the truth of the matter asserted but for their effect on him, the listener. The Government counters that Brown's statements to Simon were properly excluded as hearsay and that, in any event, any error in excluding the statements was harmless.

We need not decide whether the district court erred by excluding the statements because we agree with the Government that any such error was harmless. The first *Gallagher* factor—"the centrality of the issue affected by the error," *id.* at 197 (internal quotation marks omitted)—weighs in favor of Simon. That Simon was working for Brown

6

bolsters Simon's defense that he said "BEA," not "DEA," when he approached the victims. And that is relevant to several elements of the offense.

But we conclude that the second factor—"the steps taken to mitigate the effects of the error," *id.* (internal quotation marks omitted)—weighs in favor of the Government. To be sure, we have held that wrongful omission of an out-of-court statement is not mitigated if it was "the sole evidence that directly corroborated a defendant's own testimony about what that defendant believed" because the jurors might "disregard self-serving testimony by criminal defendants." *Id.* (citation modified). But Simon's testimony that he was working for Brown on March 29 and on April 25 was not the only testimony that supported his defense, as Brown also testified at trial. Although Brown could not remember those exact dates, he confirmed that he was a licensed bail bondsman and that he employed Simon as an independent contractor to help locate fugitives. Moreover, although A.S.'s testimony cast some doubt on the issue, Brown confirmed that the Dodge Charger depicted in the admitted photographs belonged to him, and both victims testified that they saw Simon talk to an individual in a Dodge Charger before releasing them. The victims also corroborated Simon's story that he was working for Brown when they testified that Simon said he had to call his "boss" to see if they could be released. Their testimony further confirmed that Simon's post-search behavior did not match that of a law enforcement officer, as he was unconcerned with the small amount of marijuana he found in the car and revealed his gigs as a drug dealer and a rapper. Thus, Simon did not need to testify as to what Brown said over the phone to establish that he was working for Brown when he detained the victims and searched A.K.'s vehicle.

7

That brings us to the third and most important factor—"the closeness of the case," *id.* (internal quotation marks omitted)—which weighs in favor of the Government. Contrary to Simon's position, whether he said "BEA" or "DEA" was not the only disputed issue—that is, the victims' testimony that he said he was a DEA agent was not the only evidence establishing that he represented himself to be a DEA agent when he detained the victims and searched A.K.'s vehicle. As explained, Simon's attire, demeanor, and behavior were consistent with the attire, demeanor, and behavior of a law enforcement officer. And his disclosure that he detained the victims and searched A.K.'s vehicle because they matched the descriptions of people wanted for drug and homicide crimes bolstered the Government's position that Simon represented himself as an agent of the federal agency responsible for enforcing drug laws—the DEA.

A glaring hole in Simon's story that he said "BEA," not "DEA," is that he never told the victims that they matched the descriptions of people wanted for failing to appear in court, which is what an independent contractor working for a licensed bail bondsman would be expected to do. Moreover, Brown claimed that he never instructed his independent contractors to detain or search individuals. Simon's actions, then, were not necessarily consistent with someone working for a bail bondsman. Thus, even if the jury believed that Simon was working for Brown, they could still convict him of impersonating a DEA agent when he went beyond his job description by frightening the victims, detaining them, and searching their vehicle while dressed in intimidating attire. In other words, it is "highly probable that the error[, if any,] did not affect the judgment." *Id.* (internal quotation marks omitted).

8

IV.

Because the evidence was sufficient to convict Simon and the exclusion of Brown's out-of-court statements was harmless, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*